United States Court of Appeals,

Fifth Circuit.

No. 92–4196.

ESTATE OF Arthur M. CLAYTON, Jr., Deceased, Mary Magdalene Clayton and The First National Bank of Lamesa, Independent Co–Executors, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Nov. 17, 1992.

Appeal from a Decision of the United States Tax Court.

Before POLITZ, Chief Judge, and WISDOM and WIENER, Circuit Judges.

WIENER, Circuit Judge.

This federal estate tax case concerns the eligibility, for purposes of the Marital Deduction, of that portion of a legacy in trust for the benefit of the surviving spouse for which a timely Qualified Terminable Interest Property (QTIP) election was made by the surviving spouse in her capacity as Independent Executrix. On appeal Petitioners–Appellants, Mary Magdalene Clayton (Surviving Spouse) and The First National Bank of Lamesa (the Bank), as Independent Co–Executors of the Estate of Arthur M. Clayton, Jr. (Testator), seek reversal of the Tax Court's holding that the portion of the residue of Testator's estate passing to a trust created in the testament for the benefit of Surviving Spouse (Trust B) is not eligible for a marital deduction because a provision in the testament specifies that any portion of the residue for which a timely QTIP election is *not* made will pass to and constitute a part of the corpus of another trust created in the testament (Trust A).

The Co–Executors contend that the Tax Court's holding, sustaining the position of Respondent–Appellee, the Commissioner of Internal Revenue (the Commissioner), that the subject testamentary provision is "tantamount" to a proscribed power of appointment, cannot be squared with the plain language of the QTIP provision[1] of the United States Internal Revenue Code of 1954, as

_____

[1] 26 U.S.C. 2056(b)(7) (1988).

amended (the Code),[2] which was added to the Code by the Economic Recovery Act of 1981 (ERTA).[3] Considering the same uncontested, straightforward facts upon which the Tax Court made its legal determination, we reach precisely the opposite conclusion. For the reasons set forth below, we reverse the Tax Court's judgment and hold that the portion of the residue of Testator's estate for which the timely QTIP election was made and which passes to and constitutes the corpus of Trust B is eligible for the marital deduction. We therefore remand this case to the Tax Court to redetermine the estate tax deficiency, if any, after allowing the marital deduction consistent herewith, and to calculate the net amount of estate tax and interest, if any, that is due and owing to the Commissioner from the estate of the Testator—or vice versa—after thus redetermining the deficiency.

I

FACTS AND PROCEEDINGS

The facts found by the Tax Court, largely on the basis of stipulations, reflect that Testator, a Texas domiciliary, died there on December 22, 1987, survived by Surviving Spouse (his second wife) and his four children from his first marriage. Testator had executed a Last Will and Testament (the Will) on April 8, 1982, and a First Codicil (the Codicil) to the Will on June 23, 1982. In the Will, Testator created several trusts, two of which are for the benefit of Surviving Spouse during her lifetime: The first, Trust A, is a "Credit Shelter Trust" to be funded with properties or interests in properties from the Testator's estate equal in value to the amount exempt from federal estate tax by virtue of the Unified Credit.

The second trust, Trust B, is a "Marital Deduction Trust" or "QTIP Trust" to be funded with that portion of the residue of Decedent's estate for which a timely QTIP election is made. Trust B is created for the benefit of Surviving Spouse "for and during the rest of her life." Upon her death, the remainder of Trust B is to "be added to and become part of the corpus of Trust "A', for the use and benefit of [Testator's] then living children." It is undisputed that Trust A is ineligible for the Marital Deduction.

_____

[2]26 U.S.C. §§ 1–9602.

[3]Pub.L. No. 97–34, § 403(d), 95 Stat. 172, 302.

Central to the instant case is Article THIRD, paragraph D of the Will:

In the event my executors fail or refuse to make the election under Section 2056(b)(7)(B)(II)(v) of the Internal Revenue Code of 1954, as amended [QTIP election], with respect to my Trust "B" property on the return of tax imposed by Section 2001 of the Internal Revenue Code of 1954, as amended, then the property with respect to which such election was not made shall pass to and become a part of the corpus of Trust "A" for the benefit of my Trust "A" beneficiaries.

Also central to the instant case is the mandate in Article SIXTH, paragraph A of the Will, regarding current income of Trust B:

[I]n no event shall the amount distributable by my trustees from Trust "B" to [Surviving Spouse] during any year be less than the current net income, to include all taxable net income under the [Code] as then existing, of Trust "B" during that year.

[In the Will, Testator also (1) leaves lesser assets to Surviving Spouse outright;  (2) specifies that if Surviving Spouse should make a "qualified disclaimer"[4] of any portion of the Trust B assets such portion would pass to and form part of the corpus of yet a third trust, for the benefit of Testator's children;  and (3) gives Surviving Spouse the power to appoint assets of various trusts in favor of Testator's children, both by deed during her lifetime or by her Last Will, but specifies that the power of appointment by deed during her lifetime could not be exercised with respect to assets of Trust "B"; neither could those powers of appointment be exercised in favor of Surviving Spouse, her estate, her creditors, or the creditors of the estate.]

In paragraph V. of Article EIGHTH of the Will, Testator spells out his intentions concerning QTIP treatment of Trust B property:

It is my intention that the assets of the Trust "B" be eligible to be treated, for federal estate tax purposes, as a [sic] "qualified terminable interest property" within the meaning of Section 2056 of the Internal Revenue Code, as amended.  In no event shall my Trust "B" trustees be deemed to have any authority or power over Trust "B" assets which would prevent Trust "B" assets from being eligible to be treated as qualified terminable trust [sic] properties, if my executors make the timely election to have such properties treated as such.

The Will nominates Surviving Spouse and the Bank to serve as co-trustees of all trusts created therein and as Independent Co–Executors.  In both instances the Will specifies that if Surviving Spouse does not or cannot serve, the Bank is to serve alone.  The Co–Executors are granted the same powers, duties, privileges, authorities, and responsibilities as those granted to the co-trustees under

---

[4]*See* IRC § 2518.

the terms of the Will.

In due course following the death of Testator, an Application for Probate of a Written Will and for Letters Testamentary (the application) was filed in the proper court. In an apparent effort to comply with the position of the Internal Revenue Service (IRS) announced in a 1986 Technical Advice Memorandum,[5] the application requested:

> That the qualification of the [Bank] as an Independent Co–Executor be deferred until it makes and files its oath as required by law after the estate's Federal Estate Tax Return has been filed, and the time for timely filing of the return has expired.... The request is made that Letters Testamentary issue first to [Surviving Spouse] as sole independent executrix of the estate upon her making and filing her oath, and that when the [Bank] as Independent Co-executor shall qualify by filing its oath, new Letters Testamentary shall issue to [Surviving Spouse and the Bank] as Independent Co–Executors of the estate.

The Will was admitted to probate and issuance of Letters Testamentary was authorized by an order which states that Surviving Spouse and the Bank are qualified to act as Independent Co–Executors and to receive Letters Testamentary. In conformity with the application, however, that order directed that initially Letters Testamentary issue only to Surviving Spouse as sole Independent Executrix until such time as the Bank should execute and file its oath as required by law, following the filing of the estate's Federal Estate Return, Form 706, at which time new Letters Testamentary would be issued to Surviving Spouse and the Bank as Independent Co–Executors. When new Letters Testamentary were eventually issued jointly to Surviving Spouse and the Bank as Co–Executors, the Form 706 had already been prepared, signed by Surviving Spouse as sole Independent Executrix, and mailed to the appropriate office of the IRS together with payment of the estate taxes as calculated on the Form 706.

When Surviving Spouse executed the Form 706 as sole Independent Executrix, she checked the appropriate box on Schedule M, "Bequests, etc. to Surviving Spouse," required to elect "to claim a marital deduction for Qualified Terminable Interest Property (QTIP) under Section 2056(b)(7)." The total value of deductible property interests left outright to Surviving Spouse (for which a QTIP election was neither required nor appropriate) was $78,950.00; the total value of terminable interest

---

[5]Internal Revenue Service Tech.Ad.Mem. 86–31–005 (Apr. 23, 1986), *reprinted in* 1 Fed.Est. & Gift Tax Rep. (CCH ¶ 7533.30, p. 9444).

property for which the QTIP election was made was $1,077,635, being the value of an undivided .563731 interest in specified bonds, notes and cash listed on Schedules B and C of the Form 706 (the securities). Thus, the total amount claimed as the marital deduction was $1,156,585.

The Commissioner's decision to disallow the Marital Deduction to the extent claimed by the estate for the undivided .563731 interest in the securities—for which the QTIP election was timely made—is reflected in a statement contained in the Notice of Deficiency issued by the IRS to Surviving Spouse and the Bank as Independent Co–Executors: "the marital deduction is $78,950.00 rather than $1,156,585.00 as reported on the Estate Tax Return. Accordingly, the reported taxable estate is increased $1,077,635.00." In response to the Commissioner's Notice of Deficiency, the Co–Executors filed a timely petition for redetermination in the Tax Court, the proper court to hear such cases.[6] That court's opinion was filed on September 16, 1991,[7] and its decision was entered on December 18, 1991, finally disposing of the lone contested issue of the case. The Co–Executors, on behalf of the estate, timely filed a Notice of Appeal to this court,[8] which has jurisdiction to review such cases.[9]

II

ANALYSIS

A. *Standard of Review*

"Our standard of review for appeals from the United States Tax Court is the same as for appeals from the district court: We review findings of fact for clear error and legal conclusions *de novo.*"[10] As the facts of the instant case are largely stipulated and totally undisputed, our standard of review of the facts thus found is not a matter of concern. The issue we here review is a purely legal one.

---

[6]*See* IRC §§ 6214, 7442.

[7]*Estate of Clayton v. C.I.R.,* 97 T.C. 327 (1991).

[8]*See* IRC § 7483.

[9]*See id.* § 7482.

[10]*McIngvale v. C.I.R.,* 936 F.2d 833 (5th Cir.1991).

B. *Issue*

Like the uncontested facts of this case, the sole legal issue before us is a straightforward one. As posed by the Tax Court, "[t]he issue in this case is whether an estate tax marital deduction should be allowed for the property in Trust B for which a timely election was made pursuant to Section 2056(b)(7)."  Thus stated, the issue is concise but only skeletal;  the true substance of that issue is encapsulated entirely in the previously quoted provision from Article THIRD, paragraph D, of the Will, which specifies that any portion of the residue of the estate for which the executor does not elect QTIP shall pass to and become a part of the corpus of Trust A, a trust concededly not eligible for QTIP treatment.  Posed even more precisely, the question we must answer is "Does the effect of that testamentary provision, causing the undivided interest in the securities for which the QTIP election is *not* made to be excluded from the corpus of Trust B (the QTIP Trust) when it is funded, so taint the entire residuary bequest that the value of the undivided interest in those assets for which the QTIP election is made and which will form the corpus of Trust B when funded cannot be eligible for the marital deduction?"

C. *Estate Tax Marital Deduction:  An Historical Perspective*

This case is ultimately decided on the legal meaning of the plain and unambiguous words of the Will and Code § 2056.  This is a true "eight-corners" case, determinable within the four corners of the Will and the four corners of the statute.  Nevertheless, Code § 2056 as the sole statutory well-spring of the estate tax marital deduction (the Marital Deduction)—as well as both the general exception thereto (the terminable interest) and the one among the several exceptions to that general exception for terminable interests with which we are here concerned (QTIP)—can be completely understood and appreciated only when viewed in the perspective of their collective historical development.[11]

From 1916 to 1942, the federal estate tax law took into account the differences between

---

[11]*See generally* 5 BORIS I. BITTKER, FEDERAL TAXATION OF INCOME, ESTATES AND GIFTS (1984 & Cum.Supp. # 2, 1992);  4 JACOB RABKIN & MARK H. JOHNSON, FEDERAL INCOME, GIFT AND ESTATE TAXATION (MB, 1963 & Supp.1992);  239–4th JEFFREY N. PENNEL, TAX MANAGEMENT:  ESTATES, GIFTS, AND TRUSTS PORTFOLIOS:  ESTATE TAX MARITAL DEDUCTION (BNA, Inc. 1992).

community property states and common law states. Abiding by state law, however, produced a disparity between community property states and common law states.[12] The first effort of Congress to eliminate that disparity was included in the 1942 amendments to the Internal Revenue Code of 1939.[13] As a result of the 1942 enactment, however, the value of the entire community property was taxed in full in the estate of the first spouse to die.[14] Rather than creating equality, the 1942 enactment put married couples residing in community property states at a distinct disadvantage.

> Despite this new geographical disparity [between community property and common law states], the Supreme Court upheld the constitutionality of the 1942 Economic Source Rule in *Fernandez v. Weiner,* [sic][15] decided in 1945.[16]

In the first major tax bill after World War II,[17] Congress undid the result of *Wiener,* which had been so unpalatable to community property states, enacting for the first time the "new concept of "estate-splitting' as a corollary to "income-splitting' between husband and wife."[18] The vehicle employed for so doing was the Marital Deduction.

The original Marital Deduction was quite obviously a device designed to allow estate "equalization," i.e., to recognize the 50–50 situation in community property jurisdictions while allowing common law couples to equalize, through the Marital Deduction, their combined estate

---

[12]*See* BITTKER, *supra* note 11, at 129–3 & 4.

[13]*See* § 402, Revenue Act of 1942, 56 Stat. 798.

[14]BITTKER, *supra* note 11, at 129–4.

[15]*Fernandez v. Wiener,* 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116 (1945).

[16]BITTKER, *supra* note 11, at 129–5. Some have suggested that this treatment in the Revenue Act of 1942 and its approbation by the Supreme Court in *Fernandez v. Wiener* can only be understood in the context of the extreme fixation of Congress on raising revenue to finance the war effort for World War II, and the equally pervasive patriotism of those times, which even seeped uphill to the Supreme Court. How else, they ask rhetorically, could one explain that the majority opinion in *Korematsu v. United States,* 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944), the landmark case condoning internment of Americans of Japanese ancestry, was written by Associate Justice Hugo Black, one of the most ardent and active advocates of the Bill of Rights and individual freedoms ever to sit on the Court.

[17]Revenue Act of 1948.

[18]RABKIN & JOHNSON, *supra* note 11, at 53–33.

irrespective of which spouse was actually the wealthier.[19]  An essential feature of the Marital Deduction from its very beginning, however, was that any property of the first spouse to die that passed untaxed to the surviving spouse should be taxed in the estate of the surviving spouse.  This concept persists to the present time; and it is an indispensable ingredient of the result we reach today.

A corollary of taxability in the estate of the surviving spouse was and remains the exclusion of "terminable interests" from the category of properties for which the Marital Deduction is available. An interest that terminates does not form part of the death estate of the surviving spouse, so if a terminable interest in property were deductible in the first estate, such property would escape tax in the estates of *both* spouses.[20]  Thus, in 1948 and today, "[t]o qualify for the Marital Deduction, an interest in property must ... *avoid being disqualified by a complex set of rules relating to "terminable interests'.*"[21]  As shall be shown, however, a number of exceptions to the terminable interest exception are recognized.

In 1976 Congress liberalized the Marital Deduction significantly by establishing dual yardsticks for measuring the maximum estate tax Marital Deduction.[22]  For decedents dying after December 31, 1976, the maximum Marital Deduction was *the greater of* $250,000 or one-half of the adjusted gross estate.  Nevertheless, many other features of Code § 2056, including the unavailability of the Marital Deduction for terminable interest property, remained essentially unaffected by the TRA of 1976.

D. *Backdrop for QTIP*

During the five years following 1976 no statutory changes of particular significance to the Marital Deduction occurred.  The stage was set, however, for the most dramatic and expansive liberalization of the Marital Deduction in history.  Not surprisingly, the overarching consideration of

---

[19]BITTKER, *supra* note 11, at 129–6.

[20]*See id.* at 129–17.

[21]*Id.* at 129–16.  (emphasis added)

[22]Tax Reform Act of 1976, Pub.L. No. 94–455, 94th Cong., 1st Sess. (1976) U.S.Code Cong. & Admin.News 1976, p. 2897 (hereinafter 1976 TRA).

the sweeping Marital Deduction changes of 1981 was the resurgence of the decades-old concept of marital property as the unitary estate of both spouses, and 1948's "new concept" for "estate-splitting" as a corollary to "income-splitting" between husband and wife.[23]

Leading to the 1981 enactment of ERTA was the burgeoning realization that an ever-increasing number of testators were encountering a serious dilemma: They could not provide maximum lifetime benefits to their surviving spouses and, at the same time, control who would be the ultimate recipients of the property after the death of the surviving spouse. Congress recognized that the ranks of such testators included a growing number of those who expect to be survived by children of a first marriage and by a spouse of a subsequent marriage. Under pre–1982 Marital Deduction rules, particularly the one prohibiting the deduction of terminable interests, such a testator faced a classic Catch–22 decision: He could either 1) provide maximum financial benefits and security for the surviving spouse but only at the risk that the survivor might waste the property or appoint it to successors other than the children of the testator's first marriage; or 2) ensure that the property would devolve to his children of a prior marriage (or other objects of his bounty) but at the cost of losing the Marital Deduction and risking underendowment of the surviving spouse. Even the pre–1982 vehicle of the power-of-appointment marital trust would not allow such a testator to ensure ultimate inheritance by children of his first marriage.[24]

The strong sense of Congress was that if the concept of the marital property regime as a single unit, preservable intact until the death of the second spouse, was to realize its full potential, something truly new and innovative would be required. None can quarrel with that description of the fundamental change in the Marital Deduction wrought by ERTA: the *unlimited* Marital Deduction. "Congress flew into the wild blue yonder in 1981 by exempting all transfers between husband and wife ... subject [only] to rules ... to insure [sic] that the exempted property will be taxed if and when the surviving spouse disposes of it by gratuitous transfer, whether inter vivos or at death."[25]

---

[23]RABKIN & JOHNSON, *supra* note 11, at 53–33.

[24]*See generally,* BITTKER, *supra* note 11, at 129–58 to 129–65.

[25]*Id.* at 129–6.

Thus, to retain the "article of faith" that property which is untaxed in the estate of the first spouse to die must be taxable in the estate of the surviving spouse, Code § 2056's general denial of marital deduction treatment for terminable interests was preserved as an exception to the new general rule of unlimited deductibility of interspousal transfers. Even so, Congress realized that, without something else, the aforesaid dilemma would persist for many testators. The well-verbalized realization by Congress[26] that married testators—particularly those with children of a former marriage—would be left with a Hobson's Choice as long as terminable interest property was ineligible for the Marital Deduction, prompted genuine creativity. Out of thin air and from the whole cloth, Congress invented a brand new, theretofore unseen concept: Qualified Terminable Interest Property. If "unlimiting" the Marital Deduction was a flight into the wild blue yonder, Congress truly "slipped

---

[26]*See, e.g.,* H.Rep. No. 97–201, 97th Cong., 1st Sess., at 159–60, *reprinted in* 1981–2 CB 352, 377–78 U.S.Code Cong. & Admin.News 1981, p. 105: "[T]he committee ... believes that an individual should be free to pass his entire estate to a surviving spouse without the imposition of any additional tax.... In addition, the committee believes that [such a] simplification of the estate and gift taxes can be achieved by allowing an unlimited deduction for transfers between spouses.... In addition, the committee believes that present limitations on the nature of interests qualifying for the marital deduction should be liberalized to permit certain transfers of terminable interests to qualify for the marital deduction.... [U]nless certain interests which do not grant the spouse total control are eligible for the unlimited marital deduction, a decedent would be forced to choose between surrendering control of the entire estate to avoid imposition of estate tax at his death or reducing his tax benefits at his death to insure [sic] inheritance by the children. The committee believes that the tax laws should be neutral and that tax consequences should not control an individual's disposition of property.... Nevertheless, the committee believes that property subject to terminable interests qualifying for the marital deduction should be taxable, as under present law, upon the death of the second spouse (or, if earlier, when the spouse disposes of the terminable interest in such property)." *See, also,* 127 CONG.REC. 17,289 (July 24, 1981) (statement of Senator Symms). "Mr. President, the tax bill we are currently considering has incorporated some major estate tax reforms.... However, the enactment of an unlimited marital deduction without any change being made in the qualitative requirements for qualification would present an estate owner a difficult choice in many cases.... The point becomes more significant as divorce and remarriage increase, which has occurred. The property owner would like to be sure that upon the death of his spouse his children by a prior marriage or marriages share in his property, including the marital deduction property.... However, for the substantial property owner who must pay a tax if the marital deduction is not used[,] the inability to satisfy each of two objectives—postponing payment of tax and being able to control the disposition of the property—remains and the tax pull would be substantial to make maximum use of the deduction. A qualification test for marital deduction purposes which eliminates the general power of appointment requirement would permit satisfaction of both objectives and provide more flexibility in estate planning.... Yes, Mr. President, the Treasury supports the amendment."

the surly bonds of earth"[27] with the advent of QTIP.

E. *Qualified Terminable Interest Property*

In the perspective of the long history of continual expansion and liberalization of the Marital Deduction during the decades since its introduction in 1948, and against the backdrop of the adoption in 1981 of the unlimited marital deduction, the intent, function and purpose of QTIP is not difficult to discern. Unmistakably, the Marital Deduction is the embodiment of a strong public policy. By itself, ERTA's removal of the dollar and percentage limitations on the Marital Deduction to make it "unlimited" was purely *quantitative.* Although transfers to the surviving spouse in outright ownership or fee simple title were freed of all quantitative limits, other categories of property—principally terminable interests—would remain totally excluded from deductibility unless something *qualitative* were done. QTIP was invented to produce the desired qualitative expansion of the classes of property eligible for the Marital Deduction, i.e., to extend, for the first time ever, the availability of the Marital Deduction to those types of terminable interests in property that Congress deigned to "qualify." Hence the moniker "qualified terminable interest property" and the acronym "QTIP."

As thus created by Congress, QTIP is an exception-to-the-exception for non-deductibility of terminable interests in general. And, as is universally recognized and applauded, Congress accomplished this revolutionary change using uncommonly clear and cohesive language, particularly for tax provisions, with the insertion of subsection (b)(7) in Code § 2056.

1. *Statutory Scheme*

Subsection (a) of Code § 2056 states the broad, general grant of a deduction from the estate of the first spouse to die. The amount of the deduction is the value of any interest in property which passes or has passed from the decedent to the surviving spouse, to the extent that such interest is included in determining the value of the decedent's gross estate.

Subsection (b) of Code § 2056 expresses the general, terminable interest exception to subsection (a)'s general grant of the deduction. As it has the effect of limiting a public policy matter,

---

[27]John Gillespie Magee, Jr., *High Flight, reprinted in* BERKE BREATHED, BLOOM COUNTY BABYLON: FIVE YEARS OF BASIC NAUGHTINESS 96 (1986).

this exception to the unlimited Marital Deduction must be construed narrowly. By its title, the exception applies to a "Life Estate or Other Terminable Interest." Code § 2056(b)(1) defines "terminable interest" and states generally that a deduction will not be allowed for such an interest.

There then follow, however, a number of particular exceptions to that general terminable interest exception. Part icular types of terminable interests that are in fact deductible by virtue of being exceptions-to-the-exception include 1) a legacy conditioned on survivorship for a limited period,[28] 2) a life estate with power of appointment in the surviving spouse,[29] 3) life insurance or annuity payments with power of appointment in the surviving spouse,[30] and 4) a charitable remainder trust.[31] QTIP is another specific "counter-exception" to the general exception of Code § 2056(b) denying a marital deduction for terminable interest property. The entire statutory concept of QTIP is contained in Code § 2056(b)(7); as it is succinct, we reproduce the relevant portion in the margin.[32]

---

[28]IRC § 2056(b)(3).

[29]*Id.* § 2056(b)(5).

[30]*Id.* § 2056(b)(6).

[31]*Id.* § 2056(b)(8).

[32](7) Election with respect to life estate for surviving spouse.—

    (A) In general.—In the case of qualified terminable interest property—

        (i) for purposes of subsection (a), such property shall be treated as passing to the surviving spouse, and

        (ii) for purposes of paragraph (1)(A), no part of such property shall be treated as passing to any person other than the surviving spouse.

    (B) Qualified terminable interest property defined.—For purposes of this paragraph—

        (i) In general.—The term "qualified terminable property" means property—

        (I) which passes from the decedent,

        (II) in which the surviving spouse has a qualifying income interest for life, and

        (III) to which an election under this paragraph applies.

2. *Important QTIP Features*

A. *Election.* Gifts or bequests of terminable interests that appear to be eligible for the Marital Deduction are nonetheless not automatically deductible. An irrevocable, affirmative election must be made on the estate tax return by the executor before an apparently deductible terminable interest meets the definition of QTIP.

It is axiomatic that any estate tax election which is not made inter vivos by the testator can only be made (a) by someone else (b) aft er the death of the decedent. And we are aware of no post-mortem estate tax election that is required to be made earlier than the time for filing the Form 706. In keeping with the Congressional purposes of 1) eliminating the need for testators to risk predicting the future, and 2) providing both flexibility and the opportunity for post-mortem estate planning either to minimize or "optimize" the estate tax impact on the combined marital property of the spouses, the QTIP election can be made at any time before such filing date. Still, like other estate tax elections (and other exceptions to the terminable interest rules), the *effect* of the QTIP election

---

(ii) Qualifying income interest for life.—The surviving spouse has a qualifying income interest for life if—

(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property, and

(II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

Subclause (II) shall not apply to a power exercisable only at or after the death of the surviving spouse. To the extent provided in regulations, an annuity shall be treated in a manner similar to an income interests in property (regardless of whether the property from which the annuity is payable can be separately identified).

(iii) Property includes interest therein.—The term "property" includes an interest in property.

(iv) Specific portion treated as separate property.—A specific portion of property shall be treated as separate property.

(v) Election.—An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable.

*Id.* § 2056(b)(7).

is retroactive to the instant of death, irrespective of when it is actually made. Significantly, the party statutorily vested with the exclusive right to make the post-mortem QTIP election is *not* the surviving spouse, as one might expect, but the executor. Congress obviously did this as an extension of the testator's volition but with all of the guesswork removed.

Congress also recognized the need for post-mortem flexibility when it vested the executor with the additional option of making a *partial* QTIP election. The election need not be "all or nothing"; rather, the executor may choose QTIP treatment for any percentage or share of the property interest, from zero to 100%.

B. *Property.* A limitation which was clear prior to ERTA was that, "[i]n applying the terminable interest rules, it [was] essential to honor the statutory distinction between an "interest' in property and the underlying property itself."[33] In ERTA, Congress recognized that if this distinction were made applicable to QTIP, it could prove unduly restrictive of the kinds of property interest (other than perfect ownership or fee simple title) that would be eligible for the deduction. Such a potential restriction was eliminated by the inclusion of a new definition of *property.* "The term "property' includes an interest in property."[34] This feature dovetails with the *partial* QTIP election.

C. *Separate Shares.* The QTIP portion of Code § 2056[35] which follows on the heels of the definition of property mandates that "[a] specific portion of property shall be treated as separate property." Like the partial election and the definition of property to include an "interest in property," the "separate share" concept enhances post-mortem flexibility and planning. "[T]he Treasury construes the "specific portion' rule to permit the executor to elect Q–TIP treatment for a fraction or percentage of an otherwise qualifying trust."[36] Of interest in the instant case is the position announced by the Treasury, in proposed regulations, that would permit separate trusts to be created

---

[33]BITTKER, *supra* note 11 at 129–31 (citing IRC § 2056(b)(1)(A) and Treas.Regs. § 20.2056(b)–1(e)(2)).

[34]IRC § 2056(b)(7)(B)(iii).

[35]*Id.* § 2056(b)(7)(B)(iv).

[36]*See* BITTKER *supra* note 11, at 129–61 & 62.

by a partial election:

> [T]he trust may be divided into separate trusts to reflect a partial election that *has been made* or is to be made.[37]

"[A]s ... the statute provides that "a specific portion of property shall be treated as separate property,' the executor can elect only for a portion of corpus. This greatly extends the usefulness of this provision."[38] "In case of a qualified terminable interest property trust, "property' includes an interest in property, and a "specific portion' of property is treated as separate property. Thus it is possible to obtain the Marital Deduction for a specific portion of the corpus of the trust for which the spouse is entitled to the income interest."[39]

D. *Property Passing to the Surviving Spouse.* Entitlement to the Marital Deduction for any property, including QTIP, requires the property pass to a person who as a matter of law is the "surviving spouse" of the testator. That requirement is not an issue in the instant case.

E. *Property Passing from the Decedent.* Another requirement of the Marital Deduction is that property for which the deduction is claimed in fact be an "interest in property which passes or has passed from the decedent...."[40] That the decimal interest in the securities "passes from the decedent" within the meaning of Code § 2056 is not in dispute here.

F. *Property Included in Determining the Value of the Gross Estate.* Also uncontested in the instant case is that the value of the undivided interest in the securities was included in determining the value of the testator's gross estate, as is required for any legacy to be eligible for the Marital Deduction.

3. *Definition as Substance*

The position of the Commissioner and the judgment of the Tax Court rises or falls on the definition of QTIP. The same is true for the opposite position of the Co–Executors and for the

---

[37]Prop.Treas.Regs. § 20.2056(b)–7(b).

[38]RABKIN & JOHNSON, *supra* note 11, at 53–61.

[39]*Id.* at 53–66 (internal citation omitted).

[40]IRC § 2056(a).

holding we make today.

The Code contains a three-pronged functional definition of QTIP, which is followed immediately by specific definitions of terms used in that tripartite definition. As the definition of QTIP begins with the statement that " "qualified terminable interest property' means property—," the first step is to identify the "property" to be tested under the elements of the definition. Relying on two specifically defined terms—that "property" includes an *interest in* property; and that a "specific portion" of property is to be treated as *separate* property—the Co–Executors argue that the "property" under examination here is the separate, undivided .563731 interest in the securities that was identified on the Form 706 as the property to which the QTIP election applies. Relying on nothing that has either been cited to us or that our independent research has produced, the Commissioner and the Tax Court insist that the "property" here under examination is the entire residue of testator's estate, being the maximum amount of property and interests in property with which Trust B could be funded were a total QTIP election to be made. For reasons explained in more detail below, we agree with the position of the Co–Executors and reject the position of the Commissioner and the Tax Court.

The second step is to see if the identified "separate interest in property" (the undivided interest in the securities for which the QTIP election was made) meets the Code's definition of QTIP. That is done by testing it for compliance with each of the three prongs of that statutory definition.

All agree that one of those prongs, i.e., that the separate interest in property "passes from the decedent," is met. We conclude that a second prong, is met, i.e., that the property be an interest "to which an election under this paragraph applies." We reach that conclusion by observing that *election* is a defined term: "An election under this paragraph in respect to any property shall be made by the executor on the return ... [and] ... shall be irrevocable."[41] Here, Surviving Spouse as Independent Executrix duly and timely completed the Form 706, checked the appropriate box on Schedule M, and identified the property "in respect to" which that election is made, i.e., the undivided .563731 interest in the securities listed on Schedules B and C. Thus, the property being tested for eligibility is the

---

[41]IRC § 2056(b)(7)(B)(v).

same property to which the election made by the Independent Executrix applies.

The third prong requires that the separate interest in property be one "in which the surviving spouse has a *qualifying income interest for life*."[42] This phrase too is a defined term of art: Such an interest is one in which "the surviving spouse is entitled to all the income ... payable annually or at more frequent intervals ... [and of which] no person has a power to appoint any part of the property to any person other than surviving spouse."[43]

Under the terms of the Will, Surviving Spouse is expressly given the right for life to receive all income from Trust B, the corpus of which is the separate property interest in question. The executors and trustees are directed to pay such income to her no less frequently than annually. Even so, "[t]he statute does not require that each day income accumulates that the income be paid immediately to the spouse."[44] In fact, "[n]o provision need be made for paying income before the executor distributes the property to the trustee, ..."[45] Clearly, the annual-income-for-life element is met even if the income is not disbursed until a year after the trust is funded—an event that can only occur during or at the end of the orderly administration of the estate. Obviously funding of every testamentary trust occurs after the death of the testator; the executor cannot possibly ascertain on "day one" the amount of the income. Just as obviously, then, the beneficiary must wait a reasonable time before the income is actually received. But receipt and entitlement are not congruent. The requirement of life income interest is met as long as the eventual disbursements include all income accruing from and after the moment of the testator's death.

The other definitional element of "qualifying income interest for life" is that no one may have a power to appoint any of the property to anyone other than the surviving spouse. We have already determined that the "property" being considered is the undivided interest in the securities for which

---

[42]*Id.* § 2056(b)(7)(B)(i)(II) (emphasis added).

[43]*Id.* § 2056(b)(7)(B)(ii)(II).

[44]*Estate of Howard v. C.I.R.,* 910 F.2d 633 (9th Cir.1990).

[45]RABKIN & JOHNSON, *supra* note 11, at 53–63 (citing Treas.Reg. § 20.2056(b)–5(f)(g). *See* Rev.Rule 72–283, 1972–1 C.B. 311 (first payment may be delayed until one year after trust created).

the executor made a timely QTIP election.  No reasonable reading or construction of the Will or the statute can validate the position of the Commissioner, as endorsed by the Tax Court, that the Independent Executrix's QTIP election itself is "tantamount" to a power of appointment to the testator's children.  Clearly, the estate's entitlement to a QTIP deduction is not meant to be abrogated simply because making a *partial* election for a separate interest in the property, i.e., *not* making a full election as to all interest in the property, results in a portion of the estate's residue—one that would have passed to Trust B under a full election—passing to Trust A.  To embrace the Commissioner's flawed logic and deliberate disregard for the plain wording of the pertinent part of Code § 2056 would be to engage in pure sophistry.

Besides being unable to direct our attention to anything that might support their interpretation, the Commissioner and the Tax Court cannot escape the effects of their own interpretative pronouncements on the election prong of the QTIP definition.  As shall be seen, such pronouncements implicitly acknowledge that the election element of the definition is viewed in the past tense, i.e., that although the *effect* of the election is tested as of the instant of the testator's death, the definitional *eligibility* of the separate terminable interest under examination is tested as though QTIP election had already been made.

In the Treasury's own proposed regulation interpreting the *definition* of QTIP, cited to us by the Commissioner in the appendix to her brief, the Department identifies the "property" as that "which the executor elect*ed* to treat as qualified terminable interest property."[46]  Likewise, the Tax Court, in citing its decision in the instant case to support its judgment in *Estate of Willard E. Robertson v. C.I.R.,* refers to the election element of the definition pertaining to property "for which an election *has been* made."[47]

4. *Additional Flaws in the Commissioner's Position*

The Commissioner misses the mark by insisting that the QTIP provision should be construed narrowly because it is an exception to the prohibition of deducting terminable interest under the

---

[46]Prop.Treas.Reg. § 2056(b)–7(b)(3) (41 Fed.Reg. 21, 350 March 21, 1987).

[47]98 T.C. No. 47, 4976 (1992) (emphasis added).

Marital Deduction. As we have noted, however, it is Code § 2056(b)'s general prohibition of deducting terminable interests that is the exception. It is an exception to the broad rule of deductibility of interspousal transfers which in turn implements the clear will of Congress favoring, as a matter of public policy, deferral of estate tax until the death of the second spouse—to the extent such deferral is desired by the parties. It is that general, terminable interest exception that must be narrowly construed. As QTIP is an exception to that exception, however, QTIP enjoys the same favored position and liberal construction as is properly afforded to the Marital Deduction itself.

More importantly, there is nothing in the plain wording of the entire QTIP subsection which, when viewed in light of the definition of terms therein provided, even remotely supports the position of the Commissioner that if anything occurs after the death of the testator—such as the QTIP election—to prevent even a modicum of property which under the testament would have passed from the decedent to the surviving spouse, the deduction is unavailable for *all* otherwise eligible property. To reach that strained result, the Commissioner would have us ignore the overarching truism that many acts must be done and many facts must be determined *after* the death of the testator in order to determine the taxable estate. The question is not *when* those determinations are made or *when* those acts are performed but whether their *effects* relate back, *ab initio* to the moment of death. For example, a qualified disclaimer by the Surviving Spouse has precisely the effect of the QTIP election here: Both are volitional acts; both can be made only after the death of the testator; both relate back, *ab initio,* to the date of death of the testator; and both have the effect of causing estate property which would otherwise pass to the Surviving Spouse to pass instead directly to or for the benefit of other parties. Likewise, while seldom volitional, the death of the Surviving Spouse within six months following the death of the testator who conditions the legacy on survivorship would have the same effect, but again retroactive to the moment of the testator's death.

Curiously, the Commissioner and the Tax Court appear to view QTIP legislation as some sort of Congressional paternalism aimed at ensuring the financial stability of the surviving spouse. Clearly such protectionism played no part in it. If the intention had been to dangle the carrot of deductibility in front of testators to induce them to ensure the financial well-being of the surviving spouse,

Congress would surely have given the power to make the QTIP election to the surviving spouse, not the executor. The point we here emphasize is that for tax purposes Congress was and is interested only in that portion of terminable interest property for which the QTIP election *is* made; it has no interest whatsoever in the portion of any terminable interest property for which the election is *not* made. Being ineligible for the Marital Deduction, that property is taxed right where the Commissioner and Congress want it taxed—in the estate of the first spouse to die. Congress could not care less whether the portion of the terminable interest property for which the QTIP election is *not* made goes to the surviving spouse, to the children, or to a stranger. Obviously, that is why Congress placed the election *in the definition* of QTIP property. If Congress had intended the result advocated by the Commissioner, it could have 1) defined the property without reference to the election, 2) specified a subsequent election, and 3) provided separately for the election to apply to all property meeting the definition, thereby separating the election from the definition. Facially, the statute eschews any such separation.

From whence it came we know not, but the Tax Court here made the pronouncement that the QTIP election gave the executor "control over trust assets [that] is tantamount to a power to appoint property that was subject to the qualifying income interest."[48] That unsubstantiated, conclusionary statement can only be the product of a circular argument—one that we reject. First, the QTIP election cannot vest the executor with control over "trust assets" before they become trust assets! The undivided interests in the securities for which the election is made are *estate* assets but they do not become *trust* assets until the trust is funded, even though the economic effect of funding is retroactive to the instant of death. Assets used to fund each testamentary trust get there by virtue of the provisions of the Will and the administration of the estate. The same analysis is applicable to that portion of the quotation from the Tax Court's opinion that refers to *property that was subject to the qualifying income interest.* No income interest is *qualifying* until it meets the full definition for QTIP, including the election prong. As we have just noted, one of the three essential elements in the definition of such property interest is that it be property for which—in the Tax Court's own

_____

[48]*Clayton,* 97 T.C. at 336.

words—"an election *has been* made."[49]

Additionally, the Commissioner appears to have seized on a gratuitous statement from the Tax Court opinion in the instant case to bootstrap an even more adventuresome government position, i.e., that "any QTIP trust that pours nonelected property over is flawed, apparently even if the bypass trust is QTIPable in its own right."[50] Such an arbitrary and unsupported misconstruction of the statute cannot be justified by any reasonable reading. It can only be explained as overzealousness in revenue collection, deliberate disregard for the clear purpose, intent and policy behind the statute, and an historic aversion to the Marital Deduction which is well documented in the Tax Court Reports, the Federal Reporter System, Treasury Regulations, Revenue Rulings, Technical Advice Memoranda, Private Letter Rulings, and the like.

"Loophole" is a term frequently used as a pejorative in the context of taxation. Although it is usually reserved for taxpayers and their professional advisors, in truth the Commissioner and the Service are no less active in probing tax statutes for loopholes. Historically, that has been part of the game, leaving to Congress the damage control of plugging loopholes through technical amendments. The position taken by the IRS and advocated by the Commissioner in the instant case, however, goes beyond mere probing for loopholes overlooked by Congress. Rather, it reflects an effort to batter such a hole in the statutory wall where none exists. We will not approbate such overreaching. From every standpoint—history, expressed intent, logic, reading *in pari materiae* with other post-mortem provisions, and—above all—the plain language of the statute—the position of the Co–Executors meets muster while the Commissioner's fails.

5. *The End Result*

Having thoroughly parsed the statute, examined the terms as therein defined and eliminated the flawed construction of the Commissioner, we now reassemble Humpty Dumpty by reconstituting

---

[49]*Robertson,* 98 T.C. No. 47 at 4976 (emphasis added).

[50]PENNELL, *supra* note 11, at C & A 5 (Supp. 8/10/92). "This is not a proper result, because no abuse is involved, and its extrapolation from *Clayton* [ ] is unwarranted.... Nothing in the government's proposed QTIP regulations anticipates or warns taxpayers about this unwarranted result." *Id.*

the statutory definition of QTIP by replacing all terms of art with their statutory, jurisprudential or regulatory definitions:

> "Qualified Terminable Interest Property means a separate interest in property, which was included in determining the value of the gross estate, and (1) which passes from the decedent, (2) from which the surviving spouse is entitled to all income for life, payable no less frequently than annually, no part of which can be appointed by any person (including the surviving spouse) to any person other than the surviving spouse, and (3) which the executor elect*ed* to treat as Qualified Terminable Interest Property."

When all definitions are thus factored into the applicable Code section's tripartite definition of QTIP, it is clear beyond cavil that the election given to the executor by Congress is *not* "tantamount" to a power of appointment, and does not divest the surviving spouse of anything about which Congress was or is concerned. The provisions of the Will that effect the funding of Trust B with a terminable interest in that separate decimal fraction of the estate's residual assets for which the election is made, and which effect the funding of Trust A with that portion of the residue for which the election is not made (including the "other" separate interest in the securities) are indisputably effective as of the moment of death, albeit retroactively from the time the election is made. Such retroactivity is an expected and indispensable characteristic of all estate tax elections, not to mention many non-tax aspects of Will implementation. Even though Trust B is not *funded* until after the QTIP election is made, the Surviving Spouse as QTIP beneficiary of that trust is entitled to and assured of receiving every dollar of net income generated by such corpus from and after the instant of the testator's death. Neither the corpus of that trust nor the income thereof can be appointed by any person to any person other than the Surviving Spouse.

Congress clearly could not care less about the post-mortem disposition of that portion of the residue of the testator's estate for which the QTIP election was not made, *because* every dollar's worth of that property was taxed currently in the estate of the Testator as the first spouse to die. That is the very reason for allowing a *partial* election and for treating specific portions of interests in property separately. As such the Will and the administration of the Testator's estate, including the partial QTIP election, met the only conditions that Congress has placed on the ability to defer estate tax on a terminable interest via the Marital Deduction, i.e., that the specific portion of the terminable interest property for which the election is made be taxed in the estate of the surviving spouse, and that

all other property and interests in property—terminable or not—be taxed in the estate of the first spouse to die.

III

CONCLUSION

The Marital Deduction of Code § 2056 excludes from taxability in the estate of the first spouse to die those properties or interests in property used in calculating the gross estate that pass from the decedent to the Surviving Spouse. For decedents dying after December 31, 1981, the Marital Deduction is unlimited in both quantum and share. Although the Marital Deduction is not generally available for interspousal transfers of terminable interests in property, Code § 2056 contains express exceptions. One such exception exists for terminable interest property that meets the Code's definition of "qualified terminable interest property." That exception is set forth in full in Code § 2056(b)(7), and the particular type of terminable interest for which the exception is available—"qualified terminable interest property"—is defined in sub-subsection (B) thereof.

As sub-subsection (B)(iii) defines the term "property" to include an "interest in property"; and as sub-subsection (B)(iv) mandates that a "specific portion" of property be treated as a "separate property," any testing of terminable interest "property" which is the object of an interspousal transfer must treat such interest as a specific portion of the property, separate and apart from the underlying property. Conducting such a test to determine eligibility for the Marital Deduction by virtue of being qualified terminable interest property must begin with the statutory definition.

That definition, found in sub-subsection (B)(i), opens with the statement that the term "qualified terminable interest property" means "property." Focusing on the separate interest in property being tested in the instant case—an undivided .563731 interest in the securities listed on the Form 706—we conclude that it meets each of the three prongs of the definition. First, it is a separate interest in property to which the QTIP election applies. To borrow the words of the Tax Court and the Treasury respectively, it is property "for which an election has been made" or "which the executor elected to treat as qualified terminable interest property." The separate interest in property here under examination meets the "election" prong of the definition as set forth in sub-subsection (B)(i)(III).

That the separate interest in property meets a second prong, the one set forth in sub-section (B)(i)(I)—a separate interest in property "which passes from the decedent,"—is not in dispute.

The remaining prong, set forth in sub-subsection (B)(i)(II)—a separate interest in property in which the surviving spouse has a qualifying income interest for life—is met by virtue of the unambiguous language of the Will. The trustees of Trust B are commanded to pay all net income generated by the corpus of that trust—beginning with the death of the testator—to the Surviving Spouse at least annually for the remainder of her life. Under equally unambiguous language of the Will, the corpus of Trust B will consist of any portion of the residue of testator's estate which the Independent Executor elected to treat as QTIP, here the undivided .563731 interest in the subject securities. Because the election and income provisions under the trust are retroactively effective, *ab initio,* to the moment of the testator's death, the income interest of the Surviving Spouse covers the period that begins with the testator's death and ends with the Surviving Spouse's death.

Moreover, by the express language of the Will, no party—including Surviving Spouse—has the power or authority to appoint any part of the separate interest in property, which passes from the decedent, as to which QTIP election was made, and in which the Surviving Spouse has an annually payable income interest for life. The Will contains no express power of appointment of the interest for which the election is made; in fact, the Will expressly negates such possibility. And we reject out of hand the strained construction of the partial election and its effect on the funding of the several residuary trusts as being "tantamount" to a power of appointment.

Therefore we hold that the terminable interest in property for which the Marital Deduction was taken on Testator's Form 706 by virtue of the QTIP election is eligible for that deduction. To disallow it for the circular reasoning advanced by the Commissioner would defy logic, common sense, and the purpose for which QTIP was designed and implemented.

We perceive no appropriate basis for the Commissioner's concern with separate interests in property for which no election was made and for which no deduction was taken, i.e., the balance of the residue of testator's estate, including the remaining undivided .436269 interest in the subject securities. No QTIP election was made for it; no deduction was claimed for it; and federal estate

taxes were timely paid on it. Neither do we perceive a reason for the Commissioner's concern that such other separate interests in property could have passed to Trust B and formed a part of the corpus thereof if the QTIP election had been made for it. By definition, the Commissioner need only be concerned with separate interests in property for which the QTIP election *is* made, not that for which no election is made—except to see that tax is paid on it in the estate of the first spouse to die. And the Independent Co–Executrix did that in a complete and timely manner.

Finally, as we hold that the subject clause in the Will does not make the QTIP election here "tantamount" to a power of appointment for purposes of Code § 2056(b)(7)(B)(ii)(II), the identity of the party or parties serving in such capacity is of no consequence. It is irrelevant that under the Will a party other than Surviving Spouse might have served with her as Independent Co–Executor or in her stead as sole Independent Executor.

For the foregoing reasons, the judgment of the Tax Court is reversed and the case remanded to that court for redetermination of the estate tax deficiency in the estate of the Testator, allowing the Marital Deduction for the qualified terminable interest property for which the Surviving Spouse, in her capacity as Independent Executrix, duly made the QTIP election on the Form 706. Such redetermination shall include consideration of any other applicable adjustments not at issue in this appeal, as well as interest.

REVERSED AND REMANDED.