Jessye E. **ROBERSON** and Pamela R. Robbins, Individually and as Co–Executrixes of the Estate of William J. Roberson, Deceased, D.O.D. April 15, 1985, Plaintiffs,

v.

**FARM CREDIT BANK OF TEXAS, Defendant.**

Civ. A. No. 4:92 CV022–D–O.

United States District Court, N.D. Mississippi, Greenville Division.

Feb. 18, 1993.

Defendants' Motion to Dismiss, at 12–15.

Cynthia I. Mitchell, Merkel & Cocke, Clarksdale, MS, for plaintiffs.

James E. Lambert, Lambert & Bailey, Jackson, MS, for defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

Testator William J. Roberson, deceased, died possessing title in fee simple to certain real property, roughly consisting of 2,360 acres within LeFlore and Tallahatchie Counties, Mississippi. To obtain a $650,000.00 loan from defendant Farm Credit Bank of Texas (FCB), decedent's son William H. Ro-

berson, individually and as co-executor of decedent's estate, pledged the acreage as security for the FCB debt in two "Deeds of Trust and Security Agreements" (attached as exh.'s "3" and "4" to Pls.' Amended Compl. Decl.Judgm.). Identical in form and substance, both documents were filed and recorded on or about August 31, 1991: one was filed and recorded in LeFlore County; the other was filed and recorded in Tallahatchie County.

Besides Roberson's signature, the deeds of trust carry signatures that purport to be those of decedent's surviving spouse Jessye E. Roberson, individually and as co-executrix, and decedent's daughter Pamela R. Robbins, successor co-executrix.[1] Claiming that their signatures are forgeries, plaintiffs seek partial summary judgment on their complaint[2] for declaratory judgment.[3] Specifically, movants urge the undersigned to set aside the subject deeds of trust as invalid.

Defendant bank does not dispute the inauthenticity of plaintiffs' signatures.[4] Although the financial lender agrees that the forged documents are unenforceable against the current co-executrixes individually, it, nevertheless, insists the deeds of trust remain valid and enforceable against the estate of William J. Roberson, deceased. In defendant's estimation, the realty, when pledged as collateral for the FCB loan, constituted an undistributed estate asset, which Roberson, as co-executor, had full authority to pledge, notwithstanding his co-executor status. Following defendant's logic, the signature of the estate's other co-executrix—Roberson's mother—was unnecessary, since she had relinquished her co-executory powers to her

1. The Chancery Court of LeFlore County appointed Robbins substitute co-executrix in place of her brother William H. Roberson, who, as co-fiduciary with their mother, originally had been granted letters testamentary by the Chancery Court, April 30, 1985. Roberson resigned his appointment of co-executor, October 28, 1991; his sister was named successor co-executrix, October 31, 1991.

2. Diversity jurisdiction rests with this court: Plaintiffs are resident citizens of Leflore County, Mississippi; Texas is the principal place of business of the defendant bank, a federally chartered financial institution. Finally, the amount in con-

troversy exceeds the requisite statutory dollar amount of $50,000. 28 U.S.C. § 1332 (1992).

3. Pursuant to Fed.R.Civ.P. 57 and 28 U.S.C. § 2201, Plaintiffs filed their complaint for a declaratory judgment on January 29, 1992; an amended version was filed, June 3, 1992 on leave from the court.

4. In response to plaintiffs' motion, FCB "agrees that the signatures of Jessye E. Roberson and Pamela R. Robbins on the subject deeds of trust are not their genuine signatures." (Def.'s Resp. to M.P.S.J., par. 1.)

son, leaving him with full decision-making power in matters of the estate.[5] Plaintiffs, of course, hold a different view: rather than an asset of the estate, they claim that the realty was already the res or corpus of one of decedent's two testamentary trusts when the deed of trust was executed. Therefore, to be valid, the deed of trust would need to have been signed by both co-trustees of the trust holding the land as its corpus.

Dismissing plaintiffs' position, defendant contends that the pledged land had not yet become trust property when the deeds of trust were granted to secure the loan, proceeds of which issued, August 27, 1991. Transfer of the realty to the marital trust, it asserts, did not occur until December 18, 1991, the date of an order from the Leflore County Chancery Court approving of a deed of conveyance from plaintiffs as co-executrixes to the marital trust. (Def.'s Br.Resp. to MPSJ at 5.) According to its theory, until actual distributions of assets were made from the estate to the testamentary trusts, the trusts remained unfunded and could not, therefore, have existed. The court does not comport: The December 18, 1991 order permitting the co-executrixes' deed of conveyance did not serve as the trust funding mechanism. Evidence of the land as trust corpus appears in decedent's estate's federal and estate gift tax return, otherwise known as "Form 706." [6] Schedule "M" of the return, "Bequests, Etc., to Surviving Spouse," leaves no doubt that the land was intended to serve as funding for the "Roberson Marital Trust" and maximize the estate's benefit of the marital deduction provision.

When marital deduction formula clauses are utilized in a decedent's will, quitclaim deeds of conveyance are often used by the estate's fiduciary to track and clarify the chain of title. Given that decedent's will contained an extensive marital deduction clause, it was logical for plaintiffs to use a deed of conveyance as a clarification device. Defendant's argument, aside from being unconvincing, raises no issues of material fact. In the opinion of the court, there are no genuine factual issues as to when the real property vested in the trusts specified in the testator's will.[7]

Apart from obligating the estate, the deeds of trust, defendant argues, are valid as to any present or vested future interest of Roberson's in the pledged land. Apparently, defendant takes the position that Roberson, by encumbering the property with the deeds of trust and promissory note, also diminished his own rights as a devisee of the real property to the extent of part or all of his present or vested future interest in the land, if any. On the surface, defendant's argument appears to defeat summary judgment. A closer look at the record, however, reveals that Roberson was precluded by a spendthrift provision in his father's will from alienating any or all of his interest as a beneficiary of the trust.[8] Consequently, Roberson was precluded from pledging his interest in the land to FCB as security for the loan.

After conducting a detailed review of decedent's last will and testament, the parties' pleadings and the evidentiary materials supporting and opposing plaintiffs' motion, the court is compelled to grant the partial summary judgment relief which plaintiffs request.[9] For the reasons set forth in the

---

**5.** As support for its argument, defendant calls the court's attention to several excerpts from the deposition testimony of Jessye E. Roberson, attached as "exh. S" to Def.'s Item. Facts Supp. Resp. to Pls.' MPSJ, p. 11; the significance of these excerpts is discussed in the portion of the opinion on joint fiduciaries.

**6.** The fiduciary of a decedent whose gross estate exceeds $600,000, is required to file I.R.S. Form 706, within nine months after the decedent's date of death. *See* 26 I.R.C. § 6075(a) (1993) (time for filing estate and gift tax returns).

**7.** In its response to the motion for partial summary judgment, defendant belittles plaintiffs' statement that the land fell into one of decedent's two testamentary trusts—the residual trust or the marital trust. Defendant's commentary equating plaintiffs' statement with one "saying a piece of land is located somewhere between California and New York" offers nothing to advance the summary judgment process.

**8.** The court reserves further discussion of the spendthrift provision in decedent's will for later in its opinion.

**9.** In reaching its decision, the court is guided by the standard encompassed under Federal Rule 56(c): Summary judgment is rendered when the court is convinced that (1) no genuine issue of

court's legal analysis to follow, plaintiffs are entitled to judgment declaring the deeds of trust to be void.[10] In declaring subject deeds of trust void, cancelled and nullified, this court specifically reserves for trial all other issues raised in the pleadings in the case *sub judice.* Specifically, the court does not render any decisions as to the validity of the promissory note dated August 19, 1991 (attached as "exh. 4" to the "Complaint for Declaratory Judgment") in favor of the defendant. Nor does the court reach the matters raised in the defendant's counterclaim. A key factor in the court's decision is the structure and design of decedent's· will. Therefore, before engaging in its legal analysis, the court discusses the pertinent portions of the Last Will and Testament of William J. Roberson, deceased.[11]

## A. THE TESTAMENTARY INSTRUMENT

Decedent is the settlor of two testamentary trusts: "The William J. Roberson Marital Trust" and "The William J. Roberson Residuary Trust." The circumstances concerning the marital trust, while not controlling today's decision, bear significantly on the court's opinion. The designated co-trustees of the marital trust are decedent's son William and the Deposit Guaranty National Bank.[12] As per his father's will, William H. Roberson, as the individual trustee, has the responsibility of "keeping the corporate trustee [Deposit Guaranty] apprised of the needs of [decedent's] wife." Deposit Guaranty is the designated custodian "of all the

assets of the trust." The trust assets are comprised of property, which the executor, to obtain the maximum allowable marital deduction, selected from the estate assets.

The will specifies that the trusts are to be administered and "governed by the terms and provisions of the Uniform Trustees' Powers Act of Mississippi as amended." The will further empowers the trustees to "sell, transfer, convey, mortgage, lease and dispose of the trust property upon such terms and in such manner and for such amounts as the trustees shall deem proper...."

Finally, the court notes the inclusion of a spendthrift clause in decedent's will: "Item VIII" of the probate instrument expressly states, "The beneficiaries have no power to sell, assign, transfer, encumber or in any manner to anticipate or dispose of any part of their interest in the trust funds or the income produced from the funds."

## B. LEGAL ANALYSIS

■ Decedent expressly intended to qualify for and take complete advantage of the federal estate tax marital deduction. 26 U.S.C. § 2056(a) (1989). *See* Decl. Judgm.Compl., exh. 2, "Last Will and Testament of William J. Roberson, deceased, Item VI, par. E." Tracking statutory and regulatory language, decedent's will grants his surviving spouse a general testamentary power of appointment and a life interest in "all the [trust] income ... payable [at least] annually...." § 2056(b)(5).[13] Although the mari-

material fact exists and (2) movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

10. In so ruling, however, the court does not absolve the estate from repaying any portion of the loan proceeds, which it may have used to retire estate debts or obligations. If, on the other hand, the monies represent an indebtedness of William H. Roberson, defendant should seek redress from him. Furthermore, it does not reach the issue of whether defendant has asserted a valid counterclaim for the attachment of an equitable lien against the decedent's estate.

11. A petition for probate of decedent's will was submitted to the Chancery Court of LeFlore County, Mississippi, April 30, 1985. Thereupon, a decree was entered by the clerk of the court appointing petitioners William H. Roberson and Jessye Roberson co-executors of decedent's es-

tate. On May 29, 1985, the decree was approved by the Chancery Court.

12. Deposit Guaranty is the trustee of the residuary trust.

13. To qualify for a marital deduction under § 2056(b)(5), a bequest or devise to a surviving spouse must meet the five following conditions:

(1) The surviving spouse must be entitled for life to *all of the income* from the entire interest, or a specific portion of the entire interest, or to a specific portion of all the income from the entire interest.

(2) The income payable to the surviving spouse must be payable annually or at more frequent intervals.

(3) The surviving spouse must have the power to appoint the entire interest or the specific portion to either herself or her estate.

tal trust property was not subject to taxation in decedent's estate due to the marital deduction, the power of appointment over it in decedent's surviving spouse ensures that the marital trust res is taxable in her estate. Rather than avoided, the estate tax generated by the marital trust property is merely deferred until the death of the surviving spouse.

■ Rather than a "QTIP" trust,[14] decedent's will established a marital deduction trust to reduce the estate's taxable income dollar for dollar. § 2056(b)(5). The amount of land that would actually fund the marital trust remained unspecified in the will to afford the executor some latitude and flexibility in computing the marital deduction. A specific reference to the land in the will's marital trust clause was not essential for it to serve as the trust corpus. It is evident from the estate's "706" that the land was selected by the executor to partially fund the marital trust. "[M]any acts must be done and many facts must be determined after the death of the testator in order to determine the taxable estate." *Estate of Clayton v. Commissioner of Internal Revenue,* 976 F.2d 1486, 1498 (5th Cir.1992). When the determinations are made, or when the acts are performed, are not nearly as important as "whether their effects relate back, ab initio, to the moment of death." *Id.* The economics of funding the testamentary marital trust is deemed retroactive to the instant of decedent's death. *Id.* at 1499. While the administration of the estate is normally the means by which funding of testamentary trusts is accomplished, *see id.* (trust assets "get there" courtesy of estate administration and will provisions), there was no magical moment when the realty changed from an estate asset to a trust asset. In fact, the real property technically never passed through the estate; title to the land immediately vested in the devisees upon the death of the testator. *Anderson v. Gift,* 156 Miss. 736, 126 So. 656, 661 (1930). At no time ever did the executor gain either control or title over the realty. By operation of the residual and marital clauses in decedent's will, the land became trust property, title to which split into legal and equitable portions: equitable title vested in the devisees whom decedent named as trust beneficiaries in his will; legal title, of course, vested in the designated trustees for the benefit of the trust beneficiaries. An actual physical change of property possession was not necessary to bring the trust into existence. 76 Am.Jur.2d Trusts § 53 (1992). Consequently, defendant's argument that the trusts remained unfunded when the documents, labeled, "Deeds of Trust and Security Agreements," were drawn, executed and recorded in 1991 is without merit.

As marital trust property overseen by decedent's son and Deposit Guaranty as joint trustees, the farm land could not be pledged to defendant as security in a deed of trust, unless both trustees acted jointly. While "[a] trustee has the power ... [t]o pledge a trust asset," *see* Miss.Code.Ann. § 91–9–107 (1992), when the settlor of a trust calls for its administration by co-trustees, a joint exercise of the trust powers conferred on them is generally required in matters of discretion and judgment. 76 Am.Jur.2d Trusts § 348 (1992). Mississippi law requires a majority of co-trustees to act in an exercise of decision-making power when they number three or more. Miss.Code.Ann. § 91–9–113 (1972). When, as here, the number of joint trustees accepting appointment is two, the participation of both is required when exercising the powers vested in them by the trust. *Id.* The rule is longstanding in Mississippi: "wherever a power to act is conferred upon two or more, ... without the concurrence of all, the power cannot be exercised. *Bartlett v. Sutherland,* 24 Miss. 395, 403 (1852). Without the signature of Deposit Guaranty, the "Deeds of Trust and Security Agreements" are invalid and unenforceable. Under Mississippi law, the signature of the individual trustee, William H. Roberson, alone is

---

(4) The power in the surviving spouse must be exercisable by her alone and (whether exercisable by will or during life) must be exercisable in all events.

(5) The entire interest or the specific portion must not be subject to a power in any other person to appoint any part to any person other than the surviving spouse.

26 C.F.R. § 20.2056(b)–5(a) (1991).

**14.** 26 U.S.C. § 2056(b)(7) (1989).

insufficient to encumber the trust property, despite defendant's assertions to the contrary.

Even if the court were to accept as true, defendant's argument that the land was an estate asset which the executrixes had not yet transferred to either the marital or residuary trusts, the decision of the undersigned would not change. The actions taken by William H. Roberson as co-executor without the concurrence of his co-fiduciary and mother, Jessye E. Roberson, have no effect. Executing a deed of trust to secure a substantial commercial loan is a special act "to be performed jointly by [multiple] executors." *Bank of Port Gibson v. Thomas W. Baugh et al.,* 17 Miss. (9 Smedes & Marshall's Reports), 290, 303 (1848). Absent a provision in the will otherwise, co-executors "are, in law, only one person[;]" both must act collectively when exercising fiduciary powers in the nonministerial matters of the decedent's estate. 31 Am.Jur.2d (Executors and Administrators) § 1101 (1989). *See also Carter v. Hurst,* 234 So.2d 616, 619 (1970) (contract of sale declared invalid and unenforceable because not all co-executors knew of, or authorized, its execution).

To be relieved of her fiduciary appointment as co-executrix, decedent's spouse Jessye E. Roberson would have been required to petition the court for permission to resign. Without an order permitting her resignation, Mrs. Roberson continued in the role of co-executrix. Miss.Code.Ann. § 91-7-85 (1972). While she may have deferred to her son's business judgment, Mrs. Roberson was never relieved of her appointment as co-executrix. Thus, her son had no authority to act alone in administering decedent's estate.

Having determined that the deeds of trust are unenforceable against the estate or the current co-executrixes in either their individual or fiduciary capacities, the court turns to defendant's alternative approach of salvaging the deeds of trust: enforcement of the deeds against any vested future interest decedent's son may have in the pledged land. Here, too, the court concludes that the terms of the testamentary trust, notably the spendthrift provision, prevented William H. Roberson from conveying his vested future interest in the land to defendant through a deed of trust as security on the loan.

Although a trustee, who is also a beneficiary may in some instances have the power to encumber or alienate "any or all of his ... interest in the trust res ..., the terms of the trust" and the Uniform Trustees' Powers Law govern and control the powers of trustees. 76 Am.Jur.2d § 339 (1992). As a trust beneficiary, the decedent's son had "no power to sell, assign, transfer, encumber or in any manner to anticipate or dispose of any part of [his] interest in the trust funds" according to the trust terms specified in Item VIII of the testamentary instrument. Furthermore, the will provided that "[n]one of the principal or income of any trust created under [decedent's] will shall be liable for debts of any beneficiary or be subject to seizure by creditors of any beneficiary." In light of the spendthrift clause included in the terms of the trust, the deed of trust is unenforceable against William H. Roberson's interest in the land.

None of defendant's arguments convince the court that the deeds of trust have even a slight element of validity. Each route which FCB takes to collect on its perceived "secured" debt results in a dead end. The deeds of trust are unenforceable. While the documents contain the true signature of William H. Roberson, he was without sole authority to sign or effect a pledge of the land, either as co-trustee of the marital trust [15], or co-executor of decedent's estate before his removal. Similarly, the spendthrift clause contained in the terms of the testamentary trust prohibited him from pledging any individual interest he may have held as a trust beneficiary.

---

15. Roberson was not a trustee of the residuary trust; the decedent designated Deposit Guaranty National Bank as the sole trustee of the residuary trust.