**ESTATE OF Willard E. ROBERTSON, Deceased, Walter G. Miller, Successor–Executor, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 93–2488.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1994.

Decided Feb. 4, 1994.

Thomas A. Mars of Springdale, AR (argued), W. Jackson Butt, II of Fayetteville, AR, appeared on the brief, for appellant.

Ernest J. Brown, Dept. of Justice, Washington, DC (argued), for appellee.

Before HANSEN, Circuit Judge, Floyd R. GIBSON, Senior Circuit Judge, and KOPF,* District Judge.

KOPF, District Judge.

In this federal estate tax case, the decedent's will left his spouse an income interest in Trusts M–2 and M–3, but provided that if the executor did not elect to treat the property in Trusts M–2 and M–3 as "qualified terminable interest property" (QTIP property) within the meaning of 26 U.S.C. § 2056(b)(7), the property would instead be added to the nonmarital trust. The executor made the QTIP election as to the property in Trusts M–2 and M–3. The tax court held that the decedent's estate was not entitled to an es-

---

* The HONORABLE RICHARD G. KOPF, United States District Judge for the District of Nebraska, sitting by designation.

tate tax marital deduction for the spouse's interest in Trusts M–2 and M–3 because her interest in the trusts was contingent on the executor making the QTIP election and, thus, did not satisfy the requirements of 26 U.S.C. § 2056(b)(7). *See Estate of Robertson v. Comm'r,* 98 T.C. 678, 1992 WL 145274 (1992).

The Estate has appealed the disallowance of the marital deduction. Following the decision of the United States Court of Appeals for the Fifth Circuit in the indistinguishable case of *Estate of Clayton v. Comm'r,* 976 F.2d 1486 (5th Cir.1992), we reverse the decision of the tax court and remand with the instruction to allow the marital deduction claimed by the Estate on its federal estate tax return with regard to Trusts M–2 and M–3.

## I.

This is a dispute between the Estate of Willard E. Robertson (the Estate) and the Commissioner of the Internal Revenue Service (Commissioner) concerning an estate tax marital deduction claimed by the Estate on its federal estate tax return filed September 28, 1984.

## A.

On September 18, 1987, the Commissioner issued a statutory notice of deficiency to the Estate, determining an estate tax deficiency.

The Estate timely filed a petition in the United States Tax Court challenging the alleged deficiency. The auditor in charge of the estate tax return had not questioned the marital deduction claimed for two marital residuary trusts, but the Commissioner conducted an additional review during the tax court litigation and decided to challenge the Estate's claim that the two marital residuary trusts constituted "qualified terminable interest property."

On December 23, 1991, the Commissioner filed a motion for partial summary judgment on the issue of whether the surviving spouse's interest in these two marital residuary trusts qualified for the marital deduction as QTIP property. On June 29, 1992, the tax court issued a memorandum opinion granting the Commissioner's motion for partial summary judgment. Relying upon its prior opinion in *Estate of Clayton v. Comm'r,* 97 T.C. 327, 1991 WL 179577 (1991), the tax court concluded that because the executor of the decedent's estate possessed the ability to control and direct the assets in Trusts M–2 and M–3 by virtue of a right to make or not make a QTIP election, the Estate was not entitled to a marital deduction because (1) the wife's rights did not "pass" from the decedent as required by 26 U.S.C. § 2056(b)(7)(B)(i)(I), (2) the executor's ability to control the assets of the trusts by virtue of the QTIP election was "tantamount to a power to appoint property," which did not meet the requirements of 26 U.S.C. § 2056(b)(7)(B)(ii)(II), and (3) the executor's power over the assets of Trusts M–2 and M–3 created the possibility that the wife would not be "entitled to all the income from the property" within the meaning of 26 U.S.C. § 2056(b)(7)(B)(ii)(I).

## B.

Willard E. Robertson (the decedent) died in Arkansas on October 29, 1983, survived by his spouse, Marlin Head Robertson, and the sons of his second marriage, Willard E. Robertson, Jr. ("Robbie"), and James Christopher Robertson ("Chris").

Article IX of the decedent's will addressed the disposition of the residue of his estate. In paragraph 1(a) of Article IX, the decedent directed that if his wife survived him, his residuary estate would be divided into four separate parts. The first part, designated as the "Willard Robertson Trust," was to be funded by an amount of property "equal in value to the largest amount which, after allowing for the unified credit which has not been claimed for transfers made during my life, and any other allowable credits, will result in no federal estate taxes being imposed upon my estate." The Willard Robertson Trust was for the sole benefit of the decedent's sons of his second marriage, Robbie and Chris. The surviving spouse was given no interest in this trust.

The rest of the residue of the Estate was to be divided into three equal trusts, designated as the "Marlin Robertson Trust–1"

(Trust M–1), the "Marlin Robertson Trust–2" (Trust M–2), and the "Marlin Robertson Trust–3" (Trust M–3). Paragraphs 3(a) and 3(c) of Article IX of the decedent's will provided that:

(a) The Trustee shall pay all of the net income of the MARLIN ROBERTSON TRUSTS to my wife in convenient installments at least as often as quarter-annually during her life.

(c) * * * To the extent that my wife does not effectively exercise her power of appointment, the MARLIN ROBERTSON TRUST–1 shall upon the death of my wife be added to and commingled with the WILLARD ROBERTSON TRUST and held, or distributed in whole or in part, as if it had been an original part of the WILLARD ROBERTSON TRUST.

As indicated in paragraph 3(a) of the will, the surviving spouse also was to receive all of the net income of Trusts M–2 and M–3. However, if the executor failed or refused to make the QTIP election on the estate tax return, the assets of Trusts M–2 and M–3 were to be transferred to the Willard Robertson Trust. Specifically, paragraphs 3(d) and 4 of Article IX of the will provided as follows:

(d) I hereby authorize my executor, in his sole discretion, to elect that any part or all of any amount of property passing under this Article to the MARLIN ROBERTSON TRUST–2 and/or the MARLIN ROBERTSON TRUST–3 be treated as qualified terminable interest property for the purposes of qualifying for the marital deduction allowable in determining the federal estate tax upon my estate. Without limiting the discretion contained in the foregoing sentence, it is my expectation that my executor will make said election with respect to all of any such amount unless the timing of my wife's death and mine and the computation of the combined death duties in our two (2) estate [sic] render such an election inappropriate. To the extent that my executor does not effectively exercise the power of election granted hereunder, then such portion of the MARLIN ROBERTSON TRUST–2 and/or the MARLIN ROBERTSON TRUST–3 shall be added to and commingled with the WILLARD ROBERTSON TRUST and held, or distributed in whole or in part, as if it had been an original part of the WILLARD ROBERTSON TRUST.

4. Upon the death of my wife after my death, the Trustee shall divide the MARLIN ROBERTSON TRUST–2 and the MARLIN ROBERTSON TRUST–3, as then constituted, or if my wife does not survive me, the Trustee shall distribute the MARLIN ROBERTSON TRUST–2 and the MARLIN ROBERTSON TRUST–3 to the WILLARD ROBERTSON TRUST to be added to and commingled with the WILLARD ROBERTSON TRUST and held, or partly held and partly distributed, as if it had been an original part of the WILLARD ROBERTSON TRUST.

The executor of the will timely filed an effective QTIP election as to the trusts.

## II.

■ The court of appeals has exclusive jurisdiction to review the decisions of the tax court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a). Since the question in this case is a purely legal one, our review is de novo. *Estate of Clayton*, 976 F.2d at 1490.

■ According to the Commissioner, the "decisive" question in this case is "whether under section 2056(b)(7)(B)(ii)(II) [and the terms of the decedent's will], 'no person has a power to appoint any part of the property to any person other than the surviving spouse.'" (Appellee's Br. at 26.) More clearly perhaps, the decisive question is whether or not the right of the executor to make a QTIP election or refrain from making a QTIP election is a prohibited "power to appoint" under section 2056(b)(7)(B)(ii)(II). We believe the right to make or refrain from making a QTIP election is not a prohibited "power to appoint." We follow the decision of the Fifth Circuit Court of Appeals in *Estate of Clayton*, 976 F.2d 1486, a case which all parties regard as indistinguishable from this one.

## A.

The statute which is the subject of the dispute in this case is 26 U.S.C. § 2056(b)(7). It provides in its entirety:

(7) Election with respect to life estate for surviving spouse.—

(A) In general.—In the case of qualified terminable interest property—

(i) for purposes of subsection (a), such property shall be treated as passing to the surviving spouse, and

(ii) for purposes of paragraph (1)(A), no part of such property shall be treated as passing to any person other than the surviving spouse.

(B) Qualified terminable interest property defined.—For purposes of this paragraph—

(i) In general.—The term "qualified terminable interest property" means property—

(I) which passes from the decedent,

(II) in which the surviving spouse has a qualifying income interest for life, and

(III) to which an election under this paragraph applies.

(ii) Qualifying income interest for life.—The surviving spouse has a qualifying income interest for life if—

(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property, and

(II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

Subclause (II) shall not apply to a power exercisable only at or after the death of the surviving spouse. To the extent provided in regulations, an annuity shall be treated in a manner similar to an income interest in property (regardless of whether the property from which the annuity is payable can be separately identified).

(iii) Property includes interest therein.—The term "property" includes an interest in property.

(iv) Specific portion treated as separate property.—A specific portion of property shall be treated as separate property.

(v) Election.—An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable.

An abbreviated statement of the background of this estate tax provision is in order. "Qualified Terminable Interest Property" (QTIP) is an "exception to an exception." *Estate of Clayton,* 976 F.2d at 1493. The general estate tax rule is that property devised to a spouse is untaxed for estate tax purposes in the estate of the first spouse to die as a result of the so-called "marital deduction," but such property is taxed in the estate of the surviving spouse. *Id.* at 1491. *See* 26 U.S.C. § 2056(a). However, if the property passed to the surviving spouse in the estate of the first to die and also escaped taxation in the estate of the surviving spouse because the property constituted a "terminable interest"—such as a simple life estate—then the general rule is not applicable and there is no marital deduction. *Id.* at 1491–92. *See* 26 U.S.C. § 2056(b).

Congress further recognized that married persons—particularly those with children of a former marriage—were confronted with a dilemma so long as "terminable interest" property was ineligible for the marital deduction. *Id.* at 1492–93. The dilemma was: The decedent could (1) obtain the marital deduction by providing the surviving spouse with maximum financial benefit, but only at the risk that the surviving spouse might devise or appoint the property to successors other than the children of the first to die, or (2) ensure the property would devolve to his or her children, but at the cost of losing the marital deduction and possible underendowment of the surviving spouse. *Id.* at 1492.

Congress believed that the tax laws should be neutral as between spouses so long as the property was taxed in either the estate of the first to die or the estate of the second to die. *Id.* at 1492–93 n. 26 (quoting H.R.Rep. No. 201, 97th Cong., 1st Sess. at 159–60, *reprinted in* 1981–2 C.B. 352, 377–78; 1981

U.S.C.C.A.N. 105). Congress further believed that as between spouses so long as the property was taxed in the first or second estate the estate tax laws should not dictate how a person decided to dispose of his or her property. *Id.* Congress thus "invented [QTIP] to produce the desired qualitative expansion of the classes of property eligible for the Martial Deduction, i.e., to extend, for the first time ever, the availability of the Marital Deduction to those types of terminable interests in property that Congress deigned to 'qualify.' " *Id.* at 1493.

Congress defined the three elements of QTIP in the plain and simple language of 26 U.S.C. § 2056(b)(7)(B)(i):

(B) Qualified terminable interest property defined.—For purposes of this paragraph—

(i) In general.—The term "qualified terminable interest property" means property—

(I) which passes from the decedent, .

(II) in which the surviving spouse has a qualifying income interest for life, and

(III) to which an election under this paragraph applies.

As provided in 26 U.S.C. § 2056(b)(7)(B)(v), the third element of QTIP eligibility—the election—was explicitly intended to be a discretionary post-mortem decision exercisable by the executor of the estate:

(v) Election.—An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable.

## B.

With the statute and its background thus firmly in mind, we can now turn to the argument of the Commissioner which the tax court adopted.

The Commissioner initially points out that when one examines the statutory definition of "qualifying income interest"—the second element of QTIP—one finds that the interest the spouse receives must not be subject to a "power to appoint." The Commissioner is correct. Section 2056(b)(7)(B)(ii) provides that:

The surviving spouse has a qualifying income interest for life if—

(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property, and

(II) *no person has a power to appoint any part of the property to any person other than the surviving spouse.*

(Emphasis added.)

The Commissioner then argues that since the decedent's will provides that if the election is not made the spouse will not receive any interest in the property, the will in effect contains a power to appoint which is inherent in the executor's discretion to make or refrain from making the election.

In support of the Commissioner's position, it is argued that a "power of appointment" had been understood prior to enactment of the QTIP exception to include "all powers of appointment regardless of nomenclature." Estate Tax Regulation, 26 C.F.R. § 20.2041-1(b) (1993). By reference to these same regulations, the Commissioner stresses that a "power of appointment" has always been understood to include the power "to effect the beneficial enjoyment of trust property or its income by ... terminating the trust...." *Id.*

Thus, the Commissioner argues that Congress must have understood the words "power to appoint" in section 2056(b)(7)(B)(ii)(II) in the same way those words had been previously understood in the regulations. Therefore, since the failure to make the election in the case would "effect the beneficial enjoyment of trust property or its income by ... terminating the trust ...," *id.,* it is appropriate to treat the election as a prohibited power of appointment.

Simply put, we think the Commissioner's argument disregards the plain words of the statute. QTIP is by statutorily explicit definition property for which the election has been made. § 2056(b)(7)(B)(i)(III). We know that Congress intended, because it said

784

so in the statute, that the question of whether property was eligible for QTIP treatment was to be determined by reference to property for which the election has been made. Thus, it is irrelevant to inquire what would have happened had the election not been made. As the Fifth Circuit correctly pointed out:

> Congress could not care less whether the portion of the terminable interest property for which the QTIP election is *not* made goes to the surviving spouse, to the children, or to a stranger. Obviously, that is why Congress placed the election *in the definition* of QTIP property. If Congress had intended the result advocated by the Commissioner, it could have 1) defined the property without reference to the election, 2) specified a subsequent election, or 3) provided separately for the election to apply to all property meeting the definition, thereby separating the election from the definition. Facially, the statute eschews any such separation.

*Clayton*, 976 F.2d at 1498 (emphasis in original).[1]

We therefore conclude that the tax court erred when it found that the Estate was not eligible for QTIP treatment as to trusts M–2 and M–3.

### III.

Accordingly, the decision of the tax court is reversed, and this case is remanded with the instruction to allow the marital deduction claimed by the Estate on its federal estate tax return with regard to Trusts M–2 and M–3.

---

1. We also reject the tax court's alternative conclusions—that the spouse's rights did not "pass" from the decedent as required by § 2056(b)(7)(B)(i)(I) and the executor's power created the possibility that the spouse would not be entitled to all the income from the property as required by § 2056(b)(7)(B)(ii)(II)—because these conclusions are based on the same faulty reading of the statutory definition of QTIP.