43 F.3d 226
 75 A.F.T.R.2d 95-563, 63 USLW 2442,
95-1 USTC P 60,188,
1995 Fed.App. 4P
 ESTATE OF John D. SPENCER, Deceased; Ernestine W. Spencer,
Executor; John D. Spencer, Trust A; Ernestine W. Spencer,
Trust B; Ernestine W. Spencer, Trustee; Ernestine W.
Spencer, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 93-1997.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 16, 1994.
Decided Jan. 5, 1995.
 
 Robert T. Pappas (argued and briefed), Jones, Troyan, Coco, Pappas & Perkins, Columbus, OH, for petitioners-appellants.
 Ernest J. Brown (argued) and Gary R. Allen, Acting Chief (briefed), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, DC, for respondent-appellee.
 Before: MERRITT, Chief Judge; and GUY and NORRIS, Circuit Judges.
 MERRITT, Chief Judge.
 
 SUMMARY
 
 1
 In this estate tax case, Mrs. Ernestine W. Spencer, a surviving spouse who is also the executrix of her husband's estate, disagrees with the Internal Revenue Service and the Tax Court because they have disallowed $1.2 million in assets as a marital deduction from her husband's taxable estate. Internal Revenue Code Sec. 2056(b)(7) provides for the deductibility of "qualified terminable interest property," or so-called "QTIP". The QTIP provision, Sec. 2056(b)(7)(B), Title 26, allows a life estate in property to qualify for deductibility if (1) the surviving spouse receives all income from the property, (2) no one can appoint the property away from the surviving spouse during her lifetime, and (3) the proper statutory election is made by the executor of decedent's estate on decedent's estate tax form.
 
 
 2
 Congress created QTIP in 1981 to permit decedents to control the ultimate disposition of their estates while providing for the support and maintenance of their surviving spouses. H. R. Rep. 201, 97th Cong., 1st Sess. (1981). The basic idea under a QTIP arrangement is that the elected QTIP property will avoid taxation in the husband's estate, become subject to estate taxation in the wife's estate, and allow the husband to insure that his designated beneficiaries will receive the remainder upon the wife's death. When used in conjunction with the allowable "unified estate tax credit" of $600,000, taxation can be deferred for a time long after the decedent's death.
 
 
 3
 Estimating in advance of death how much property to commit to QTIP in order to minimize estate taxes is a problem for the estate planner. This problem led the decedent in this case not to designate specific QTIP property in his will but rather to grant his wife as executor the authority to decide what amount of property would be subject to the Sec. 2056(b)(7) QTIP election when the time came to make it.
 
 
 4
 The IRS challenges this "wait-and-see" arrangement. It argues that the testator must specify or designate in advance in the will the property to be included in a QTIP trust. It contends that because Mrs. Spencer as executrix had the power to decide how much property would go to the QTIP trust, she possessed an impermissible power to appoint property away from the surviving spouse for the interim period from decedent's death until the date of the QTIP election. She responds that once the election had been made, no one had the power to appoint any of the QTIP trust corpus away from the surviving spouse, and, the other requirements having been met, the trust should qualify under Sec. 2056(b)(7). The IRS argues alternatively that the property in the QTIP trust did not "pass" to Mrs. Spencer within the meaning of Sec. 2056.
 
 
 5
 We come to the same conclusion as both the Fifth and Eighth Circuits[1] and agree with Mrs. Spencer. Wills are often drafted a decade or more before death. Property is sold and acquired and goes up or down in value during this period. Family situations change. It is often impossible to prudently designate what should be committed as QTIP far in advance of death. By statute the election can only be made after the death of a decedent. Therefore, no property anywhere can meet the definition of "qualified terminable interest property" until after the decedent's death. Since it would be contrary to the policy and meaning of the statute, as well as counter-intuitive and against common sense, to apply the definition before the election can be satisfied, we hold that the date of election is the proper date for deciding if property meets the requirements set out under Sec. 2056(b)(7).
 
 
 6
 We also reject the Commissioner's argument that the trust fails under Sec. 2056(c) because Sec. 2056(b)(7) contains self-excepting language which, when read in light of the legislative history of the marital deduction, makes it an exception to the general rule stated in Sec. 2056(c).
 
 
 7
 Therefore, for the reasons set forth below, the decision of the Tax Court will be REVERSED.
 
 I. Facts of the Case
 
 8
 On September 24, 1984, the decedent, Mr. John D. Spencer of Licking County, Ohio, executed the John D. Spencer Trust Agreement. It provided that upon decedent's death two trusts would be established, Trust A, the QTIP Trust, for his surviving spouse, and Trust B for his children. Trust A is the subject of the current dispute.
 
 
 9
 Trust A was to be funded by the amount elected under Sec. 2056(b)(7) by the executor after decedent's death. The Trust Agreement further provided that all income from trust principal would be distributed to the surviving spouse on at least a quarterly basis and that no one could grant income or principal to anyone other than the spouse during her lifetime. The Trust Agreement named decedent's spouse, Mrs. Ernestine W. Spencer, as the trustee.
 
 
 10
 On the same day, the decedent executed his Will naming Mrs. Spencer executor of his estate. The will gave her almost complete discretion to determine the amount of the QTIP election. The will had a nonbinding provision elsewhere in its text indicating that the decedent anticipated "that my Executor will elect to minimize the estate tax payable [by] my estate."
 
 
 11
 Mr. Spencer died in March 1987. Mrs. Spencer survived him, and began her multiple roles of trustee, executrix and surviving spouse. As executrix, she determined the gross estate to have a value of approximately $1.9 million. On December 3, 1987, she appointed approximately $1.2 million of the estate to Trust A, the QTIP Trust, and used the unified tax credit of $600,000 plus certain administrative costs to reduce the taxable estate to zero. She filed Form 706, the estate tax form, with the IRS on December 5, 1987, claiming the entire value of Trust A to be exempt from taxation under Sec. 2056(b)(7). On this form, she made the QTIP election required by law. On November 8, 1990, the IRS disallowed this deduction form decedent's estate and sent Mrs. Spencer a tax bill for $416,477.62. On behalf of decedent's estate, she appealed this finding to the Tax Court. See T. C. M.1992-579. It ruled in favor of the IRS, and Mrs. Spencer appealed once more.
 
 II. Sec. 2056(b)(7)
 
 12
 Code Sec. 2001 imposes a tax on all transfers of estates by deceased United States citizens. Section 2056(a) then provides for a "marital deduction", which generally excludes from present taxation all property passing from a decedent to a surviving spouse that will later be taxed in the estate of the surviving spouse. Currently there is no limit to the amount that may be claimed as a marital deduction. But Sec. 2056(b)(1) makes an exception to this deduction for transfers of "terminable interests," defined as any interest that will terminate or fail upon the lapse of time or occurrence of a stated condition.[2] An example of a terminable interest would be a life estate in the surviving spouse with the remainder in the decedent's children. Thus, the general rule is that terminable interests are included in the taxable estate. Confusion arises because this exception is itself subject to a number of counter-exceptions which permit certain kinds of terminable interests to be excluded from the taxable estate. The subject of this litigation is the counter-exception created by Sec. 2056(b)(7), which deals with "qualified terminable interest property."
 
 
 13
 The Economic Recovery Tax Act of 1981 made a number of revisions to the estate tax code. Among others it raised the total amount of the unified credit, abolished the fifty-percent (50%) cap on the marital deduction, and added Sec. 2056(b)(7) to the tax code. By abolishing the cap on the marital deduction, Congress intended to address the problem of taxing a single estate "one and one-half times, i.e., one-half on the death of the first spouse and again fully upon the death of the second spouse." H.R.Rep. 201 at 159.
 
 
 14
 Congress added Sec. 2056(b)(7) primarily to allow a decedent to provide for a surviving spouse while controlling the ultimate disposition of the property after the surviving spouse's death. See H.R.Rep. 201 at 159-60. Before the addition of Sec. 2056(b)(7), a person planning an estate was forced to choose between either leaving property outright to the surviving spouse or leaving it to the surviving children because under prior law simply granting a life estate to the surviving spouse with remainder in the decedent's children resulted in the property's inclusion in the taxable estate. Section 2056(b)(5) had already provided an exception to the terminal interest exception to the marital deduction by allowing deductions of a life estate with a general power of appointment in the surviving spouse. But this one exception was not considered sufficient because there are situations when a decedent would want to remove discretion from the surviving spouse so as to ensure the ultimate disposition of the estate after the death of the spouse. This concern led Congress to revise the estate tax code, including the addition of Sec. 2056(b)(7).
 
 
 15
 Section 2056(b)(7) states in relevant part (with the language to be interpreted in italics):
 
 
 16
 (A) In general. In the case of qualified terminable interest property--
 
 
 17
 (i) for the purposes of [the marital deduction], such property shall be treated as passing to the surviving spouse, and
 
 
 18
 (ii) for the purposes of paragraph [ (b)(1)(A) which provides for denial of marital deduction to terminable interest property], no part of such property shall be treated as passing to any person other than the surviving spouse.
 
 
 19
 (B) Qualified terminable interest property defined.--For the purposes of this paragraph--
 
 
 20
 (i) In general.--The term "qualified terminable interest property" means property--
 
 
 21
 (I) which passes from the decedent,(II) in which the surviving spouse has a qualifying income interest for life, and
 
 
 22
 (III) to which an election under this paragraph applies.
 
 
 23
 (ii) Qualifying income interest for life.--The surviving spouse has a qualifying income interest for life if--
 
 
 24
 (I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, ... and
 
 
 25
 (II) no person has a power to appoint any part of the property to any person other than the surviving spouse.
 
 
 26
 * * * * * *
 
 
 27
 (v) Election. An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable.
 
 
 28
 In this case, the facts have been stipulated by the parties, and we must make only a legal determination. Accordingly, our review of the Tax Court's decision in this case is de novo. Smith v. Commissioner, 926 F.2d 1470 (6th Cir.1991).
 
 
 29
 The IRS argues that the QTIP deduction should be disallowed because the executrix's power to determine the amount of the election constitutes an impermissible power to appoint property away from the surviving spouse under Sec. 2056(b)(7)(B)(ii)(II) during the period between the testator's death and the date of the election. On the other hand, Mrs. Spencer points out that under the terms of trust, none of the property in Trust A can be appointed away from her until after her death. Once in the trust, the property meets the requirements of Sec. 2056(b)(7)(B), and, she argues, should qualify for the QTIP counter-exception and not be included in the taxable estate.
 
 
 30
 To resolve this issue, we must answer one decisive question: does the surviving spouse's interest in qualified terminable interest property have to be determinable on the date of decedent's death, or may the estate adopt a wait and see attitude and determine the QTIP property later on the date of the QTIP election? The IRS argues that decedent's date of death is the correct determination date.
 
 
 31
 We do not think this meaning is what Congress intended when it passed the election provision for QTIP property. Congress deliberately crafted the broad language of Sec. 2056(b)(7)(B)(v): "An election under [Sec. 2056(b)(7) ] with the respect to any property shall be made by the executor on the return of tax imposed by Sec. 2001." (Emphasis added.) Congress did not use the words "any existing qualified terminable interest property" or "any property meeting the above definition as of the date of decedent's death" or any similar limiting language, and we are not prepared to read such a limitation into this statute. The language "any property" should be given its ordinary meaning. Nowhere in the legislative history of Sec. 2056(b)(7) do we find an indication that Congress intended a different reading of the statute. Our reading is reinforced by the history of the rule against appointments away from the surviving spouse. History suggests that the main reason Congress included the language against appointments away from the surviving spouse was to ensure that the property subject to the QTIP deduction would be taxed in the spouse's estate:
 
 
 32
 [T]here must be no power in any person (including the spouse) to appoint any part of the property subject to the qualifying income interest to any person other than the spouse during the spouse's life. This rule ... will insure that the value of the property not consumed by the spouse is subject to tax upon the spouse's death (or earlier disposition).
 
 
 33
 H.R.Rep. 201 at 161.
 
 
 34
 Since Trust A property in the instant case qualifies as QTIP, it will be included in the surviving spouse's estate upon her death under Sec. 2044.[3] Were we to adopt the Commissioner's interpretation, we would be adding an unnecessary restriction. The words of the statute are plain: no property meets the definition of QTIP until the proper election is made, and no QTIP election can be made until the estate tax form is filed. Sec. 2056(b)(7)(B)(v). Since no property can be QTIP until the election is made, the proper date to determine if property satisfies the requirement of Sec. 2056(b)(7) is on the date of the election.
 
 
 35
 In support of the position that QTIP property must be ascertained as of the date of death rather than the date of election, the Commissioner cites a thirty year-old Supreme Court case, Jackson v. United States, 376 U.S. 503, 507-09, 84 S.Ct. 869, 872, 11 L.Ed.2d 871 (1964), the central holding of which is that interests are to be examined for terminability as of the date of decedent's death. At the date of decedent's death, Mrs. Spencer had the discretion to decide what property went to Trust A and what did not. The Commissioner argues that this was an impermissible power to appoint property away from the surviving spouse, and the $1.2 million election does not meet the definition of "qualified terminable interest" under Sec. 2056(b)(7)(B)(ii)(II). Therefore, it must be included in decedent's taxable estate.
 
 
 36
 Jackson is readily distinguishable from this case and not in point. In Jackson, after her husband's death, a widow received a court-ordered temporary allowance for her support and maintenance payable from his estate. The Supreme Court held that because the widow's allowance arose from a right under state law which had not vested in her as of her husband's date of death, it could not be included as part of the marital deduction because it did not meet the definition of any counter-exception to the rule that terminable interests are to be included in the taxable estate. Jackson at 507, 84 S.Ct. at 871-72. In the instant case, the decedent used an estate planning device unknown when Jackson was decided--the QTIP counter-exception to the terminable interest rule. Because the Jackson court ruled on the proper determination date for an interest which is not an exception to the terminal interest rule, and not subject to a later election, we do not think it is dispositive of this issue.
 
 
 37
 Section 2056(b)(7) creates a new and different legislative scheme. Under the election provision, no property anywhere can be considered QTIP until an election is made by the executor on Form 706, which can only be done after the date of death. When the Commissioner's interpretation is carried to its logical extent, no property could ever satisfy the statutory definition of QTIP because the election for the surviving spouse cannot be made until after the date of decedent's death. This simple fact highlights the major problem with the Commissioner's interpretation of Sec. 2056(b)(7).
 
 
 38
 An old judicially created rule used to interpret taxing statutes, like the date-of-death rule in the Jackson case, may not be used to displace the language of the statute itself. When interpreting statutes, generally the plain language of the statute is given effect, and "in determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." Crandon v. United States, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990).
 
 
 39
 The IRS would have us adopt an interpretation that would force property to satisfy every requirement for the QTIP counter-exception on the date of decedent's death except the requirement of election. This would effectively reduce the election requirement to a mere formality, defeat its apparent purpose and its most reasonable interpretation. We hold that the date of the QTIP election is the proper date to determine if property satisfies the requirements of Sec. 2056(b)(7).
 
 III. Sec. 2056(c)
 
 40
 Under Sec. 2056(b)(1)(A), in order to qualify for the marital deduction, property must pass from the decedent to the surviving spouse. At oral argument, counsel for the Commissioner raised for the first time the argument that the transfer in this case does not meet the definition of passing to the surviving spouse under Sec. 2056(c). Section 2056(c) states in relevant part:
 
 
 41
 (c) Definition.--For the purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if--
 
 
 42
 (1) such interest is bequeathed or devised to such person by the decedent;
 
 
 43
 * * * * * *
 
 
 44
 Except as provided in paragraph (5) or (6) of subsection (b), where at the time of the decedent's death it is not possible to ascertain the particular person or persons to whom an interest in property may pass from the decedent, such interest shall ... be considered as passing from the decedent to a person other than the surviving spouse.
 
 
 45
 Sec. 2056(c) (emphasis added).
 
 
 46
 The IRS forcefully argues in a brief filed at our request after oral argument that because it was uncertain who would get the property that later went to Trust A at the date of decedent's death, Sec. 2056(c) mandates that we find that the property passed to someone other than the surviving spouse. This would disqualify the property for the marital deduction under Sec. 2056(b)(1).
 
 
 47
 We do not interpret this section this way because there is a facial conflict within Sec. 2056 between the italicized language of Sec. 2056(c) and the specific language of Sec. 2056(b)(7)(A), which explicitly states that qualified terminable interest property "shall be treated as passing to the surviving spouse," and that "no part of such property shall be treated as passing to any person other than the surviving spouse." Sec. 2056(b)(7)(A)(i-ii). The resolution of this issue turns upon deciding which of the two provisions--(c) or (b)(7)(A)--should govern this case. In doing so, the court must consider the consequences that follow from one construction or another. United States v. Stauffer Chemical Co., 684 F.2d 1174 (6th Cir.1982) at 1186, aff'd 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984).
 
 
 48
 We hold that in the case of qualified terminable interest property, the self-excepting language of Sec. 2056(b)(7)(A) removes it from the operation of Sec. 2056(c) regarding when property passes from the decedent to another. If the property in question meets the requirements of Sec. 2056(b)(7) upon the date of the QTIP election, it is qualified terminable interest property as defined by Sec. 2056(b)(7). We make this choice because it is in keeping with the intent of Congress as manifested in the legislative history of the marital deduction, because the rules of statutory construction favor it, and because the IRS has failed to provide a single policy justification that favors their interpretation.
 
 
 49
 In 1948, Congress amended the estate taxation laws to provide for a marital deduction. It did this primarily to remedy taxation inequities between common-law and community-property states. S.Rep. 1013, 80th Cong., 2d Sess. (1948), 1948 U.S.C.C.A.N. 1163. Much of current Sec. 2056 was passed at this time, including Sec. 2056(c)[4]. The exceptions referred to in Sec. 2056(c) were in the initial legislation. These exceptions were the only ones created in the 1948 legislation, and each had its own provision excepting it from the requirements of Sec. 2056(b)(1), which imposes the passing requirement. Accordingly, Sec. 2056(c) recognized these exceptions in its text.
 
 
 50
 The exceptions from Sec. 2056(c) that existed in 1948 are still with us, with slight modification, as Sec. 2056(b)(5) and (6). As mentioned previously, Sec. 2056(b)(5) provides that a life estate in a surviving spouse, coupled with a general power of appointment over the property upon the death of the surviving spouse, would not violate the terminable interest rule. Section 2056(b)(6) creates an exception for life insurance proceeds and postdeath annuities. Both of these paragraphs have essentially the same language excepting them from the operation of Sec. 2056(c) ("self-excepting language"). Section 2056(b)(5) states that:
 
 
 51
 (A) the interest or such portion thereof so passing shall, for purposes of subsection [Sec. 2056](a) [providing for the marital deduction], be considered as passing to the surviving spouse, and
 
 
 52
 (B) no part of the interest so passing shall, for the purposes of paragraph [Sec. 2056(b) ](1)(A) [denying the marital deduction if the property does not pass to the surviving spouse], be considered as passing to any person other than the surviving spouse.[5]
 
 
 53
 The legislative history of Sec. 2056(c) states specifically that it would not apply to Sec. 2056(b)(5) and (6), the only exceptions that existed in 1948. "This provision [the last sentence of Sec. 2056(c) ], however, is not applicable to any interest which the surviving spouse may appoint if, by application of [Sec. 2056(b)(5) and (6) ], such interest is considered as passing to such spouse." Supp. Rep. 1013, Part 2 (1948); 1948 U.S.C.C.A.N. 1233 (emphasis added). This confirms our belief that the self-excepting provisions of Sec. 2056 were intended to remove them from operation of Sec. 2056(c), and that the words used in the last sentence of that section merely recognize the impact of the self-excepting provisions.
 
 
 54
 When Congress amended Sec. 2056 in 1981, they used self-excepting language in Sec. 2056(b)(7) that was virtually identical to that used in Sec. 2056(b)(5) and (6), but failed to make a corresponding change in Sec. 2056(c) that would have granted qualified terminable interest property the explicit exception granted to Sec. 2056(b)(5) and (6). The legislative history of Sec. 2056(b)(7) is silent regarding this omission; so it is unclear whether this was an intentional exclusion or merely a legislative oversight. Our decision must rest upon our understanding of the congressional intent regarding Sec. 2056 and the consequences of our choice. If we find this to have been an intentional denial of exception from Sec. 2056(c), we would effectively negate the self-excepting language of Sec. 2056(b)(7)(A). On the other hand, if we determine that Sec. 2056(b)(7)(A) trumps Sec. 2056(c), we will be reading an exception into Sec. 2056(c) that is not explicitly in its text.
 
 
 55
 We believe that if Congress intended Sec. 2056(c) exclusively to regulate the issue of passing, it would not have included the self-excepting language of Sec. 2056(b)(5) and (6). The language in Sec. 2056(c) would have been sufficient to exclude those subparagraphs from the operation of the statute because it specifically excepted them. Likewise, had Congress intended Sec. 2056(b)(7) to be subject to the requirements of Sec. 2056(c), it would not have included the self-excepting language of Sec. 2056(b)(7)(A) because it would have automatically been subject to Sec. 2056(c) because it was not granted an explicit exception. Viewed in this light, Sec. 2056(c) is the general rule, a rule which has statutory exceptions. QTIP is one of those exceptions, and we hold that property which otherwise meets the definition of QTIP by the date of the QTIP election, is considered to have passed as defined in Sec. 2056. Thus, the transfer to Trust A pursuant to the QTIP election passed, and qualifies as qualified terminable interest property.
 
 
 56
 This decision is in keeping with the overarching purpose of Congress to liberalize the requirements surrounding the marital deduction. The 1981 amendments to Sec. 2056 made a number of changes, each of which expanded the scope of the marital deduction. In this spirit, we think an interpretation favoring the allowance of the deduction is in keeping with Congressional intent. It recognizes that wills are often drafted long in advance of death and that family situations and the value of assets may change dramatically. There is no reason to interpret Sec. 2056(b)(7) to require that the will identify QTIP property long in advance of death and thereby deny taxpayers the full advantage of the marital deduction for QTIP property. The election provision is plain enough and seems purposely worded to avoid this estate planning problem.
 
 IV. Additional Reasons
 
 57
 Our decision is reinforced by the decisions of the Fifth Circuit in Clayton and the Eighth Circuit in Robertson, which reached the same conclusion as ours. After exhaustively detailing the legislative history of Sec. 2056(b)(7) and taking the IRS to task for overzealous revenue collection, the Clayton court, however, unnecessarily created a legal fiction that the QTIP election is somehow considered "retroactive" to the date of decedent's death. 976 F.2d at 1495. The Eighth Circuit followed suit. This nunc pro tunc treatment of the QTIP election is unnecessary for the reasons previously stated. The election provision is plain on its face and need not be read retroactively.
 
 
 58
 The IRS has failed to present a valid policy argument supporting their interpretation other than maximizing estate taxation. The IRS currently permits effectively identical dispositions of property provided the decedent has a savvy estate planner. For example, the decedent could have effectuated his goal of minimizing his estate taxes by simply leaving all of his property to Trust A. Acting under Sec. 2518[6], Mrs. Spencer would then only have had to disclaim whatever property she wished to designate for the trust benefitting decedent's children. She would have had as much discretion as she enjoyed under decedent's will, and the decedent would have enjoyed the same tax benefits and results as under his actual estate plan.
 
 
 59
 Finally, it is significant that in a 1986 private letter ruling the IRS held that if the surviving spouse was also the executor, even though her interest was contingent upon her making an election identical to Mrs. Spencer's, this interest qualified for the QTIP counter-exception. Priv. Ltr. Rul. 8631005 (April 23, 1986).[7] Although this ruling cannot be cited as precedent under 26 U.S.C. Sec. 6110(J)(3), it highlights the confusion this section has engendered at the IRS. More importantly, the fact that the IRS has done an about face since 1986 makes us even more reluctant to adopt their interpretation of this statute without an understandable articulation of a tax policy supporting it. See I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (agency's interpretation that conflicts with agency's prior interpretation entitled to considerably less deference than a consistently held agency view.)
 
 
 60
 Therefore, the judgment of the Tax Court is REVERSED and the case remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 Estate of Clayton v. Commissioner, 976 F.2d 1486 (5th Cir.1992), and Estate of Robertson v. Commissioner, 15 F.3d 779 (8th Cir.1994)
 
 
 [2]
 Sec. 2056(b)(1) states in relevant part:
 General rule.--Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest--
 (A) if an interest in such property passes or has passed ... from the decedent to any person other than the surviving spouse (or the estate of such spouse); and
 (B) if by reason of such passing such person ... may possess or enjoy any part of such property after such termination or failure or the interest so passing to the surviving spouse;
 and no deduction shall be allowed with respect to such interest ...--
 (C) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.
 
 
 [3]
 Sec. 2044 states in relevant part: "The value of the gross estate shall include the value of any property ... if [b](1) a deduction was allowed with respect to the transfer of such property to the decedent--(A) under section 2056 by reason of subsection (b)(7) thereof ..."
 
 
 [4]
 The 1948 marital deduction provision was Sec. 812(e) of the Internal Revenue Code of 1939. When the I.R.C. was revamped in 1954, it became I.R.C. Sec. 2056. All cites to the sections of the 1939 code have been updated to avoid unnecessary confusion
 
 
 [5]
 Sec. 2056(b)(6) uses the following self-excepting language:
 (A) such amounts shall, for the purposes of subsection (a), be considered as passing to the surviving spouse, and
 (B) no part of such amounts shall, for the purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.
 
 
 [6]
 Sec. 2518(a): "... if a person makes a qualified disclaimer with respect to any interest in property, this subtitle shall apply with respect to such interest as if the interest had never been transferred to such person."
 
 
 [7]
 "An income interest, the creation of which is contingent solely upon an election by the surviving spouse under section 2056(b)(7)(B)(i)(III) of the code, is a qualifying income interest for life under section 2056(b)(7)(B)(ii)."