Peter H. MATHIS, Trustee of the Julien W., also known as J. William Mathis Trust, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 3:95 cv 133 AS.

United States District Court, N.D. Indiana, South Bend Division.

Feb. 21, 1996.

Martin W. Kus, Daniel E. Lewis, Jr., Newby Lewis Kaminski and Jones, LaPorte, IN, for plaintiff.

Stephen T. Lyons, U.S. Department of Justice, Washington, DC, Karen A. Smith, U.S. Department of Justice, Tax Division, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I. Procedural History

Plaintiff Peter H. Mathis, as Trustee of the Julien W. Mathis Trust, also known as the J. William Mathis Trust, ("Trustee") filed this action seeking a refund of tax from the defendant United States of America on Febru-

ary 22, 1995. On October 2, 1995, the Trustee filed a motion for summary judgment, and on January 30, 1996, the United States filed a cross-motion for summary judgment. As both parties have fully briefed the issue, this court is now ready to rule.

## II. Facts

In April, 1989, shortly before a massive stroke left him unable to communicate, Julien William Mathis approved certain estate planning methods which had been recommended to him by counsel. Under the recommended estate plan, a trust was created of most of Mathis' interest in New York Blower Company stock on May 1, 1989, which trust provided for the disposition of trust assets upon Mathis' death. Specifically, the trust agreement provided that, upon Mathis' death, the trustee would dispose of the trust estate as follows:

[5.] (b) The remaining portion of the trust estate, together with any proceeds from the disposition of The New York Blower Company shares, shall be distributed as follows:

(I) A Qualified Terminable Interest Property Trust shall be created to be funded in accordance with an election filed by the Personal Representative of the estate of Julien William Mathis or by the Trustee under this instrument with the appropriate taxing authorities to treat such part or all of the residuary trust estate as qualified terminable interest property under Section 2056(b)(7) of the Internal Revenue Code for purposes of the marital deduction.

(ii) To the extent the Personal Representative of the estate of Julien William Mathis or the Trustee under this instrument elects not to qualify the residuary estate for the marital deduction, there shall be created a Terminable Interest Trust to receive the balance of the trust estate.

The trust then went on to provide that the Trustee would pay Mathis' surviving spouse the income from the QTIP trust, and upon her death, the Trustee would pay the undistributed income to her estate and pay the estate taxes due in her estate due to the inclusion of the QTIP property in her estate.

Mathis died on September 5, 1989. On May 30, 1990, the Trustee filed an estate tax return for the Mathis Estate on Internal Revenue Service ("I.R.S.") Form 706. On Schedule M of Form 706, the Trustee checked the appropriate box to elect QTIP status for $839,499.01 of the $1,439,205.05 in New York Blower stock. In June, 1992, the I.R.S. partially disallowed the marital deduction as to the $839,499.01 from the New York Blower stock, and assessed a deficiency of $492,886.00, along with interest of $113,-112.00.

The Trustee filed a claim for refund with the I.R.S. on June 17, 1994, challenging the disallowance of the marital deduction for the QTIP part of the trust. The I.R.S. denied the claim for refund on November 29, 1994, stating that "the interest acquired in the [QTIP] share is derived by reason of the executor's election rather than by reason of a transfer or bequest made by the decedent exclusively to the surviving spouse. Consequently, the spouse's interest in the [QTIP] share did not pass from the decedent to the surviving spouse, for purposes of Section 2056." The Trustee filed this suit following the denial of his claim for refund.

## III. Analysis

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705,* 984 F.2d 762 (7th Cir.1993). A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the

record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920–21 (7th Cir.1994); *Hughes v. Joliet Correctional Ctr.*, 931 F.2d 425, 428 (7th Cir.1991), nor may that party rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir.1992).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Smith v. Fruin*, 28 F.3d 646, 650 (7th Cir. 1994), *cert. denied*, ––– U.S. –––, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–55, 106 S.Ct. at 2512–14.

The 1986 Supreme Court trilogy was later reexamined in *Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law. The most that can be said for *Eastman Kodak*, however, is that it did not tinker with *Celotex* and *Anderson*, and possibly involves an attempt to clarify *Matsushita*. This view is well-supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441 (1992).

### A. Marital Deduction under § 2056(b)(7)

Both parties agree that the facts are undisputed and that this court is called upon to decide a pure question of law which has not been previously addressed in this circuit. That question is whether the trust grants the Trustee a power of appointment over the trust property such as would defeat the requirements of 26 U.S.C. § 2056(b)(7)(B)(ii)(II). 26 U.S.C. § 2056(b)(7)(B)(ii) provides that the "surviving spouse has a qualifying income interest for life if (I) the surviving spouse is entitled to all the income from the property, payable annually . . ., and (II) no person has a power to appoint any part of the property to any person other than the surviving spouse." The I.R.S., not surprisingly, argues that the power of the trustee to decide at the time of the QTIP election how much property will go into the trust constitutes a power of appointment over the property, which violates § 2056(b)(7)(B)(ii)(II). In support of this interpretation, the I.R.S. cites Tres.Reg. (26 C.F.R.) § 20.2041–1(b) which provides the following definition of "power of appointment."

(1) In general. The term "power of appointment" includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations. For example, if a trust instrument provides that the beneficiary may appropriate or consume the principal of the trust, the power to consume or appropriate is a power of appointment. Similarly, a power given to a decedent to effect the beneficial enjoyment of trust property or its income by altering, amending, or revoking the trust instrument or terminating the trust is a power of appointment.

The I.R.S. points specifically to the phrase "a power given . . . to effect the beneficial enjoyment of trust property or its income . . . by terminating the trust" to bolster its claim that the Trustee's determination of the trust property at the time of the election is a

power of appointment. It further refers to Tres.Reg. § 20.2056(b)–5(j), interpreting 26 U.S.C. § 2056(b)(5), which allows the marital deduction where the surviving spouse is given a life estate with a power of appointment. An example in Tres.Reg. § 20.2056(b)–5(j) states that where the trustee of a trust containing the surviving spouse's life estate has the power to distribute some of the trust corpus to the decedent's son, that power to distribute is a power of appointment, which is forbidden to anyone other than the surviving spouse if the marital deduction is to be allowed. All of this leads to the inexorable conclusion, according to the I.R.S., that the decision of the executor regarding the amount of property to place in the QTIP trust is a power of appointment over that property which violates § 2056(b)(7)(B)(ii)(II), and thus the marital deduction cannot be allowed for the QTIP trust property because the trust does not qualify for QTIP treatment.

There is, of course, another way which the decision may be viewed, and that is the way that three different United States Courts of Appeals have chosen to use. The Fifth Circuit, in *Estate of Clayton v. Commissioner of Internal Revenue*, 976 F.2d 1486 (5th Cir. 1992), the Eighth Circuit, in *Estate of Robertson v. Commissioner of Internal Revenue*, 15 F.3d 779 (8th Cir.1994), and the Sixth Circuit, in *Estate of Spencer v. Commissioner of Internal Revenue*, 43 F.3d 226 (6th Cir.1995), have all held that allowing a trustee or executor to decide the amount of money with which to fund a QTIP trust does not defeat the QTIP election for that property once placed in the QTIP trust.

█ In *Clayton*, the decedent's will provided for two trusts, one to be used as a shelter for an amount equal to the Unified Credit, and the other to be used as a QTIP. 976 F.2d at 1488. The will went on to further provide that "[i]n the event my executors fail or refuse to make the [QTIP] election ... with respect to my [QTIP Trust] property, then the property with respect to which such election was not made shall pass to and become part of the corpus of [the Unified Credit Trust]." *Id.* In all other respects, the will was clear that the QTIP

trust was intended to qualify for QTIP treatment and the trust property met the requirements for QTIP treatment. *Id.* at 1488–89. The I.R.S. disallowed the marital deduction as to the QTIP trust, asserting that the right of the executor to determine how much of the qualified property went into the QTIP trust at the time of election was a prohibited power of appointment over the property. *Id.* at 1490. The Tax Court affirmed the decision of the I.R.S., and the estate appealed to the Fifth Circuit. *Id.* In reversing the Tax Court, the Fifth Circuit detailed the development of the marital deduction and the creation of the QTIP in the Economic Recovery Act of 1981 ("ERTA"). *Id.* at 1491–93. The *Clayton* court then explained the provisions of § 2056(b)(7), which creates and allows the marital deduction for the QTIP. *Id.* at 1494–95. Key among the provisions explained by *Clayton* was the requirement of election under § 2056(b)(7)(B)(v) and the provision allowing division of property under § 2056(b)(7)(B)(iv). *Id.* As the *Clayton* court pointed out, the hallmark of the QTIP is flexibility in estate planning, and one of the ways in which the QTIP provides that flexibility is by allowing the executor the option of making a partial election, i.e., an election for only a portion of the qualified property. *Id.* "Clearly, the estate's entitlement to a QTIP deduction is not meant to be abrogated simply because making a *partial* election for a separate interest in the property, i.e., *not* making a full election as to all interest in the property, results in a portion of the estate's residue—one that would have passed to [the QTIP trust] under a full election—passing to [the Unified Credit Trust]." *Id.* at 1497. Thus, the *Clayton* court reversed the Tax Court, finding that the executor's election was not a prohibited power of appointment and that the marital deduction should be allowed for the QTIP trust. *Id.* at 1501.

Similarly, the will in *Estate of Robertson* provided that the executor was authorized to elect QTIP status for two trusts established for the decedent's spouse, and that if the executor did not so elect, the trusts were to be added to a trust which did not qualify for QTIP treatment. 15 F.3d at 781. The Eighth Circuit followed the Fifth Circuit's decision in *Clayton* and found that the execu-

tor's election was not a prohibited power of appointment for purposes of 26 U.S.C. § 2056(b)(7)(B)(ii)(II). *Id.* The Sixth Circuit in *Estate of Spencer* followed the lead of the Fifth and Eighth Circuits in holding that a will which gave the executor almost complete discretion in determining how much property would be placed in a QTIP trust did not violate 26 U.S.C. § 2056(b)(7)(B)(ii)(II). 43 F.3d at 228.

The I.R.S. here argues that because this court does not sit in the Fifth, Sixth or Eighth Circuits, it is not bound by the precedents set in *Clayton, Robertson,* and *Spencer,* and thus should find that Mathis' trustee had a power of appointment in determining the funding of the QTIP trust. However, the Seventh Circuit has provided some guidance for situations where they have not previously ruled on an issue of law. In *Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119 (7th Cir. 1987), (now Chief) Judge Posner wrote that the Seventh Circuit should "give most respectful consideration to the decisions of the other courts of appeals and follow them whenever we can. Our district judges should, of course, do likewise with regard to such decisions...." 811 F.2d at 1123. When three separate circuits have held that allowing an executor discretion in the amount of property to place in a QTIP trust at the time of the QTIP election does not constitute a prohibited power of appointment, this court is more than willing to give those courts of appeal "respectful consideration" and follow their holdings. The decision of the Trustee to treat $839,499.01 in cash as the QTIP property is not a prohibited power of appointment under § 2056(b)(7)(B)(ii)(II), and the disallowance of the marital deduction for that property was erroneous. The Trustee's Motion for Summary Judgment on this issue is granted.

### B. Administrative Expenses under § 2053

 The Trustee has also moved for summary judgment on a question involving the allocation of administrative expenses to the probate estate. At the time of his death, Mathis owned 1,125 shares of New York Blower Company stock (which had not been placed in the trust), and those shares were valued at $194,355.00. The I.R.S. deducted the $32,047.00 in administrative expenses and unsecured debts from the $194,355.00 to determine a net estate of $162,809.00. Because Mathis died intestate, his surviving spouse was entitled to one-half of the net estate, or $81,405.00 under Indiana Code § 29–1–2–1. The I.R.S. allowed the surviving spouse a marital deduction in the amount of her portion of the net estate, i.e. $81,405.00. The Trustee makes several arguments that the spouse's share should not have been reduced by the administrative expenses; however, the deduction appears to be appropriate under the Internal Revenue Code and the Indiana Probate Code. The Trustee does accurately point out, however, that the I.R.S. failed to subtract from the gross estate the surviving spouse allowance provided under I.C. § 29–1–4–1 and required to be deducted from the gross estate under I.C. § 29–1–1–3. Thus, the marital deduction stemming from the "probate estate" should be calculated as follows:

| | | |
|---|---|---|
| Gross Probate Estate | | $194,355.00 |
| Less | | |
| Surviving Spouse Allowance | 8,500.00 | |
| Other allowed administrative expenses and debts | 32,047.00 | |
| Total Allowance, Expenses and Debts | | 40,547.00 |
| Net Probate Estate | | 153,808.00 |
| Surviving Spouse's Share of Probate Estate | | 76,904.00 |
| Plus: Surviving Spouse Allowance | | 8,500.00 |
| Marital Deduction from Probate Estate | | $85,404.00 |

Thus, the Trustee's Motion for Summary Judgment on this issue is granted as to the surviving spouse allowance.

### C. Attorney's Fees

The Trustee has also requested a deduction for attorney's fees incurred in pursuing this claim for refund. As the I.R.S. has not contested this issue, that request is here granted.

### IV. Conclusion

This court now **GRANTS** Trustee's Motion for Summary Judgment and **DENIES** the I.R.S.'s Cross Motion for Summary Judgment. The I.R.S. is **ORDERED** to adjust the estate tax return for Julien William

Mathis to allow a marital deduction under § 2056(b)(7) in the amount of $839,499.01, to allow a marital deduction for the surviving spouse's share of the probate estate in the amount of $85,404.00, and to allow a deduction for attorney's fees in the amount of 15% of the amount recovered by the estate's law firm, Newby, Lewis, Kaminski & Jones. It is expected that the estate will be due a refund, and the estate is further entitled to interest on that refund pursuant to 26 U.S.C. § 6611 and § 6621. Trustee shall prepare a form of judgment conforming with this opinion and file such with the court within 30 days of this order.

**IT IS SO ORDERED.**